## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JEROME DAVIS,
VERONICA WALKER-DAVIS,
SPENCER BYRD,
ALLIE NELSON, AND
LEWRANCE GANT,

Plaintiffs,

v.

CITY OF CHICAGO,

Defendant.

Case No. 19-cv-3691

Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiffs bring this putative class action challenging the City of Chicago's impound program as it relates to car owners who have their cars impounded and are fined for offenses committed by other people. The City moves pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) to dismiss Plaintiffs' complaint with prejudice. For the reasons explained below, the Court grants in part and denies in part the City's motion to dismiss [33].

### I.    Background

In the First Amended Complaint ("FAC" or "the complaint"), Plaintiffs Jerome Davis, Veronica Walker-Davis, Spencer Byrd, Allie Nelson, and Lewrance Gant (together, "Plaintiffs") bring this civil rights action alleging that Defendant City of Chicago ("the City") impounds tens of thousands of cars each year, holding the cars until owners pay a variety of fees and fines. (Dkt. 29, FAC ¶2). Plaintiffs claim they

1

were "innocent owners" who were wrongfully subjected to fines, towing and storage fees, and the seizure of their cars. (*Id*. ¶¶2-3). They allege that the offenses that led to their cars being impounded were committed by other people and without their knowledge. (*Id*. ¶ 2). The complaint challenges a system that (a) provides insufficient notice to Plaintiffs that their car has been impounded or disposed of, (b) requires their physical presence at multiple hearings after their car has been seized, (c) allows only three limited defenses, and (d) imposes fees and fines that accrue before a final judgment is entered. (*Id*. ¶¶ 37, 39, 51, 70, 188). In addition, interest accrues on the amount the City deems it is owed by the car owner. (*Id*. ¶ 88).

Despite trying to navigate this system, none of the Plaintiffs in this case has retrieved their car. (*Id*. ¶¶ 98, 114, 123, 139, 147). Even after the loss of their cars, the Plaintiffs all owed or owe thousands of dollars in fines and fees to the City. (*Id*. ¶¶ 11, 15, 18, 21, 87, 90, 123, 147).

The relevant ordinances in this case are Chi. Mun. Code § 9-80-240, § 7-24-225, and § 2-14-132.[1] Section 9-80-240 states in part: "The owner of record of any motor vehicle that is operated by a person with a suspended or revoked driver's license shall be liable to the city for an administrative penalty of $1,000 plus any applicable towing and storage fees. Any such vehicle shall be subject to seizure and impoundment pursuant to this section." Section 7-24-225 provides in part:

> Any motor vehicle that contains any controlled substance, as defined in the Illinois Controlled Substances Act, or that is used in connection with the purchase or attempt to purchase, or sale or attempt to sell, any such controlled substance shall be subject to seizure and impoundment

---

[1] The Court takes judicial notice of City ordinances. *See Weller v. Paramedic Servs. of Ill., Inc.*, 297 F. Supp. 3d 836, 847 (N.D. Ill. 2018).

> pursuant to this section… The owner of record of any motor vehicle that is seized and impounded pursuant to this section shall be liable to the City for an administrative penalty of $2,000.00, plus towing and storage fees.

And § 2-14-132 addresses impoundment procedures, including that "[w]ithin ten days after a vehicle is seized and impounded the department…shall notify by certified mail the owner of record…of the owner's right to request a hearing before the department of administrative hearings to challenge whether a violation of this Code for which seizure and impoundment applies has occurred"; "[t]he notice shall state the penalties that may be imposed if no hearing is requested, including that a vehicle not released by payment of the penalty and fees and remaining in the city pound may be sold or disposed of by the city"; and the owner must request "a preliminary hearing in person and in writing at the department of administrative hearings, within 15 days after the vehicle is seized and impounded." § 2-14-132.

Plaintiffs seek to represent a class of all individuals who own vehicles that have been or will be impounded by the City of Chicago pursuant to Chicago Municipal Code Section 2-14-132. (FAC ¶7). The FAC contains seven counts: violation of the Proportionate Penalties Clause of the Illinois Constitution (Count I), violation of the Excessive Fines Clause of the Eighth Amendment of the U.S. Constitution (Count II), violation of the due process clauses of the Illinois Constitution and U.S. Constitution (Counts III, IV), search and seizure under the Illinois Constitution and U.S. Constitution (Counts V, VI), and an individual claim by Byrd for return of his property (Count VII).

## II. Standard

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quotations and citation omitted). *See also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A court deciding a Rule 12(b)(6) motion accepts plaintiff's well-pleaded factual allegations as true and draws all permissible inferences in plaintiff's favor. *Fortres Grand Corp. v. Warner Bros. Entm't Inc.,* 763 F.3d 696, 700 (7th Cir. 2014). A plaintiff need not plead "detailed factual allegations", but "still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under Federal Rule of Civil Procedure 8." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (citation and internal quotation marks omitted).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 1966 (2007). Deciding the plausibility of the claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chi.*, 671

4

F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009)).

"A motion to dismiss under Rule 12(b)(1) tests the jurisdictional sufficiency of the complaint, accepting as true all well-pleaded factual allegations and drawing reasonable inferences in favor of the plaintiffs." *Bultasa Buddhist Temple of Chi. v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017). *See also Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015) (*Twombly-Iqbal* standard applies to facial challenge to subject matter jurisdiction under Rule 12(b)(1)).

### III.    Analysis

In its motion, the City argues that (1) the Davises' claims are barred in their entirety by res judicata; (2) Byrd's claims are time-barred; (3) Nelson's state law claims are time-barred; (4) Plaintiffs lack standing to challenge administrative penalties other than those particular penalties that were assessed against them; (5) it was not unconstitutionally excessive to charge these penalties to Plaintiffs; (6) Plaintiffs fail to state a due process claim; and (7) Plaintiffs fail to state an unreasonable seizure claim.

#### A. Res Judicata Bars the Davises' Claims

On July 19, 2018, the Davises filed a complaint for administrative review of the impound decision in the Circuit Court of Cook County. (FAC ¶109; *see also* Cook County Case No. 2018-M1-450249). On January 7, 2019, that case was dismissed pursuant to an "Agreed Order of Settlement" (Agreed Settlement Order). (*Id.*; Dkt. 34-1, Exh. C). Under the Agreed Settlement Order, the Davises agreed to voluntarily

5

withdraw their complaint and the City agreed to accept $1170 in full settlement and satisfaction of the fines entered in the case. (*Id.*)

Res judicata bars the Davises' claims here. In Illinois, res judicata applies if "(1) there was a final judgment on the merits rendered by a court of competent jurisdiction; (2) there was an identity of cause of action; and (3) there was an identity of parties or their privies." *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 335, 665 N.E.2d 1199, 1204 (1996). Plaintiffs argue that there was no final judgment in the state court and so res judicata does not apply. They contend that "agreed orders do not constitute a final judgment on the merits under Illinois law" because they do not reflect a "court's judgment on the merits." (Dkt. 39 at 14).

Under Illinois law, however, "a settlement agreement that a state court adopts and incorporates…is the equivalent of a consent decree" and "operates to the same extent for res judicata purposes as a judgment entered after contest and is conclusive with respect to the matters which were settled by the judgment or decree." *4901 Corp. v. Town of Cicero*, 220 F.3d 522, 529 (7th Cir. 2000) (citing Illinois law). In *4901 Corp.*, the Seventh Circuit held that the state court order dismissing the case and incorporating the parties' settlement agreement had preclusive effect on the subsequently filed federal lawsuit. *Id*. at 525, 529-32.

Plaintiffs acknowledge *4901 Corp.*, but contend that *Ward v. Decatur Mem'l Hosp.*, 2019 IL 123937 (2019) controls. In *Ward*, the court dismissed plaintiff's complaint several times without prejudice always allowing plaintiff leave to file amended complaints. *Id*. ¶¶ 11-22. Five years after plaintiff filed the third amended complaint

6

and shortly before trial, the trial court granted plaintiff's motion to voluntarily dismiss the action without prejudice. *Id*. ¶ 28. A few months later, plaintiff filed a new lawsuit which was assigned to a new judge. The complaint was almost identical to the fourth amended complaint plaintiff sought to file in the original action (which the first judge denied). On summary judgment in the second case, the trial court agreed with defendant that res judicata barred plaintiff's claims. On appeal to the Illinois Supreme Court, the Court reversed the trial court's judgment, explaining that "[a]n order that dismisses the counts of a complaint, but grants the plaintiff leave to amend" is not a final order. *Id*. ¶ 48 (internal citation and quotations omitted). Thus the dismissal of the complaint "without prejudice and with permission to refile" an amended complaint, meant that "[t]he dismissal orders neither terminated the litigation nor firmly established the parties' rights" and so the "dismissal orders were not final and had no res judicata effect." *Id*. ¶ 49.

*Ward* therefore is inapposite. Here, the Davises entered into a settlement captured in an agreed order and the court dismissed the case based on that agreed order. Therefore, *4901 Corp*. controls. Indeed this year, the Seventh Circuit in *H.A.L. NY Holdings, LLC v. Guinan*, 958 F.3d 627, 634 (7th Cir. 2020) confirmed that the "weight of Illinois authority … allow[s] claim preclusion by consent judgment". In so holding, *H.A.L.* declined to certify the question to the Illinois Supreme Court.[2]

---

[2] *See also Bee-Zee Body Shop, Inc. v. Bee-Zee Serv*., 2019 IL App (1st) 182677-U, ¶ 22 (noting a split in Illinois appellate courts but concluding that "[d]eclaring a trial court's order dismissing an action with prejudice based on the parties' settlement agreement not to be a final adjudication on the merits would not only contravene well-established equitable doctrines and public policy, but would also undermine the certainty and finality associated

Finally, the Court does not agree with Plaintiffs' contention that the Agreed Settlement Order was not a dismissal "with prejudice." Although that order did not specify, it is well-settled that "where a dismissal order does not specify that it is 'without prejudice,' or that plaintiff was granted leave to file an amended complaint, the dismissal order is a final adjudication on the merits." *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 25, 402 Ill. Dec. 870, 878, 53 N.E.3d 1, 9 (2016).

Davises' claims are dismissed with prejudice.

### B. Statutes of Limitations

#### 1. Byrd's federal claims

The City next argues that all of Byrd's claims are time-barred. "[S]tatute of limitations provides an affirmative defense, and a plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses. But when a plaintiff's complaint nonetheless sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). The parties do not dispute that the two-year statute of limitations applies to Byrd's claims under 42 U.S.C. § 1983.

Plaintiffs respond that Byrd alleges continuing violations of his constitutional rights so the statute of limitations cannot start or expire while cars remain in the impound lot. "[W]hen the violation of the plaintiff's constitutional rights is a continuing one, the statute of limitations does not start to run *any earlier* than the last day of the ongoing injury." *Devbrow v. Kalu*, 705 F.3d 765, 770 (7th Cir. 2013).

with settlement agreements and expose parties to the possibility of continued future litigation or double recovery.").

The continuing violation doctrine is comprised of three categories: "(1) ongoing discrete violations; (2) acts that add up to one violation only when repeated; and (3) lingering injury from a completed violation." *United States v. Midwest Generation, LLC*, 720 F.3d 644, 646 (7th Cir. 2013). "[T]he first situation [is] a continuing violation, the second a cumulative violation, and the third a continuing-injury situation." *Id*. The third category does not toll the statute of limitations because it involves a situation where the "ongoing injury…lingers once the unconstitutional act is complete." *Haywood v. Champaign Cty.*, 596 F. App'x 512, 513 (7th Cir. 2015).

As alleged in the complaint, on June 21, 2016, Chicago police pulled Byrd over for a broken turn signal. (FAC ¶116). The officers searched both Byrd and his passenger, an automotive client, and found a bag of heroin in his passenger's pocket. (*Id*. ¶117). Police released Byrd without any criminal charge but the CPD seized and impounded his car. (*Id*. ¶¶118-19). On July 31, 2016, Byrd asked the Cook County State's Attorney to release his car, but they responded that the car was subject to a forfeiture proceeding. (*Id*. ¶120). In November of that year, Byrd filed a financial hardship motion with the Cook County Circuit Court, and the Court ordered the CPD to release the car. (*Id*. ¶¶120-21). Despite the court order, the City refused to release the car prior to Byrd paying the fines and fees that had accumulated for five months under Chicago's municipal code. (*Id*. ¶122). Around October 2018, Byrd spoke with an impound supervisor, who told Byrd the car was still impounded and it would not be released until all the fines and fees were paid. Byrd now owes more than $17,000.00. (*Id*. ¶123).

The original complaint in this case was filed on April 29, 2019. (*see* Dkt. 1). The City argues that Byrd's claims accrued at the latest by November 2016 (and so should have been filed by November 2018) when the City refused to release the car despite the state court order. At that point, the City argues, Byrd knew that his vehicle had been impounded and that the City would not return it until he paid the penalty and fees. (Dkt. 34-1 at 14-15). Plaintiffs contend that Byrd as an innocent owner is being forced to pay fines and fees for someone else's actions—"a harm that accumulates daily." (Dkt. 39 at 16). As frustrating as it is for Mr. Byrd, this "harm accumulat[ing] daily" does not constitute a "continuing violation" as the doctrine has been defined by the Seventh Circuit. Byrd's claim accrued when the City refused to release his car in November or December of 2016. (FAC ¶122).

The City's refusal to release the car without Byrd's payment is the allegedly unconstitutional act underlying Byrd's federal claims for excessive fines, due process violations, and unreasonable search and seizure. The subsequent accumulation of additional fees were a consequence of the City's discrete act. *See Savory v. Lyons*, 469 F.3d 667, 673 (7th Cir. 2006) (prisoner's continued lack of access to the evidence was the "natural consequence of the discrete act that occurred when [defendant] first denied access to the evidence."); *see also Olson v. City of Chi.*, 553 F. App'x 641, 643 (7th Cir. 2014) ("statute of limitations is measured based on the timing of the injury, not the length of its lingering effects"); *Walker v. Jumper*, 758 F. App'x 521, 524 (7th Cir. 2019) (continuing violation doctrine did not apply where plaintiff's claim was "based on a discrete incident that occurred at a specific time.").

10

Plaintiffs rely on *Manuel v. City of Joliet*, 137 S. Ct. 911 (2017) to argue a continuing violation exists here. In *Manuel*, the Supreme Court held that the Fourth Amendment governs an individual's claim of unlawful pretrial detention even beyond the start of legal process. However, the Court remanded the issue of timeliness. *Id*. at 920. On remand, the Seventh Circuit concluded that because "[t]he wrong of detention without probable cause continues for the duration of the detention", "the claim accrues when the detention ends." *Manuel v. City of Joliet*, 903 F.3d 667, 670 (7th Cir. 2018). *Manuel* did not address an alleged continuing violation like that at issue here. Still the Seventh Circuit's explanation that "we speak of a continuing *wrong*, not of continuing *harm*; once the wrong ends, the claim accrues even if that wrong has caused a lingering injury" (*id*. at 669 (emphasis in original)), shows that Byrd's contention about accumulating harm is a continuing harm, not a continuing wrong. Byrd's federal claims are dismissed as untimely.

### 2. Byrd's and Nelson's state law claims

The City argues that Byrd's and Nelson's state law claims are barred by the one-year statute of limitations in the Illinois Tort Immunity Act, 745 ILCS 10/8-101. However the Tort Immunity Act states that "[n]othing in this Act affects the right to obtain relief other than damages against a local public entity or public employee." 745 ILCS 10/2-101. It is well-settled that "the Tort Immunity Act only applies to actions seeking damages, not equitable relief." *Elue v. City of Ch*i., 2017 U.S. Dist. LEXIS 94519, at *23 (N.D. Ill. June 20, 2017). It is clear from the complaint that Plaintiffs seek declaratory and injunctive relief. (FAC ¶¶5, 158, 160). Damages are

only part of the relief sought by Plaintiffs and are requested "in the alternative" to injunctive relief. (FAC at p. 40). Therefore, the Tort Immunity Act does not bar Byrd's and Nelson's state law claims. However, because both Byrd's and Nelson's claim accrued more than one year before the filing of this lawsuit, to the extent that Byrd and Nelson seek damages from the City, those claims for damages are time-barred.

### C. Proportionate Penalties and Excessive Fines (Counts I and II)

*1. Standing*

The City argues that Plaintiffs lack standing to challenge administrative penalties as unconstitutionally excessive other than the penalties arising from the two provisions that applied to them, Chi. Mun. Code § 9-80-240 and § 7-24-225. The first requirement of "the irreducible constitutional minimum of standing" is that the "plaintiff must have suffered an injury in fact -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations and quotation marks omitted). The injury "must affect the plaintiff in a personal and individual way." *Id.* at n.1.

Plaintiffs respond that any penalty is unconstitutionally excessive when imposed on an innocent owner. (Dkt. 39 at 18). This argument does not address the City's argument that the Plaintiffs in this case lack standing to challenge penalties other than the ones levied against them. Nor do Plaintiffs cite any authority to support their argument that they can challenge *any* penalty, even ones that were not imposed on them. This argument is undeveloped and therefore waived. *See Alioto v. Town of*

*Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (discussing waiver rule where a party fails to develop arguments on a discrete issue or fails to respond to alleged deficiencies raised in a motion to dismiss).

In any event, the Court agrees with the City that Plaintiffs can challenge the penalties assessed against them because that is the injury they suffered in this case, but not *any* penalty.

### 2. Eighth Amendment Excessive Fines Claim

The Eighth Amendment of the U.S. Constitution states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. Plaintiffs allege that the "[a]dministrative penalties imposed by the City under its impound scheme…are a fine within the meaning of the Excessive Fines Clause" and "[t]he City's demand that innocent owners pay administrative penalties for legal offenses committed by another violates the Excessive Fines Clause." (FAC ¶¶ 170, 174). "The Supreme Court of the United States has adopted a 'gross disproportionality' test to determine whether a fine is 'excessive' for purposes of the Excessive Fines Clause." *Towers v. City of Chi.*, 173 F.3d 619, 624 (7th Cir. 1999).

The City responds that *Towers* establishes that the administrative penalties at issue in this case are not unconstitutionally excessive. *Towers* involved an Eighth Amendment challenge to the same ordinance here, Chi. Mun. Code § 7-24-225. The second ordinance in this case, § 9-80-240, was not at issue in *Towers* but the City argues that the *Towers* analysis applies equally to that ordinance as well. In addition,

13

the City points out, based on the allegations in the complaint, that Plaintiffs' Eighth Amendment and state law constitutional claims challenge only the administrative penalty levied on Plaintiffs, not the towing or storage fees. (Dkt. 34-1 at 16). Plaintiffs do not dispute this. (Dkt. 39).

In *Towers*, the Seventh Circuit affirmed the district court's dismissal of the complaint alleging violations of plaintiffs' Eighth and Fourth Amendment rights and of their substantive and procedural due process rights. 173 F.3d 619. Plaintiffs contend that *Towers'* Eighth Amendment holding is distinguishable for three reasons: (1) the Court did not sanction "truly innocent property owners like Plaintiffs"; (2) a fourth factor should be considered that was not considered in *Towers* to determine if the fine is "grossly disproportional"; and (3) the fines in this case should be considered in light of "evolving standards of decency." (Dkt. 39 at 19-20). First, there is no meaningful distinction between the plaintiffs in *Towers* compared to this case. In *Towers*, plaintiff Towers had not given the individual who was driving her car permission to use her car or to transport a controlled substance, she did not know that a controlled substance was in her car, and she was not present when the car was seized. 173 F.3d at 621. Towers co-plaintiff, Sturdivant was not present at the time of the seizure and did not know that a gun was in his car. *Id.* at 622. Here, Gant lent his car to a friend and Gant did not know that his friend's license had been suspended or that he had drugs with him. (FAC ¶ 143). Similarly, Nelson was in Texas when her granddaughter's boyfriend drove Nelson's car with drugs on him without her knowing

14

and against her wishes. (*Id.* ¶ 17). Plaintiffs have alleged their innocence, but they are not any more innocent than the plaintiffs in *Towers*.

Next, the *Towers* Court *did* consider all the factors to determine whether the fine was grossly disproportional including the holding of *United States v. Bajakajian*, 524 U.S. 321 (1998). Even if Plaintiffs are correct that the *Towers* Court did not specifically mention whether the law was "principally meant to reach people like [plaintiffs]", *Towers* addressed in detail the plaintiffs' roles and rejected "the notion that the plaintiffs must be considered completely lacking in culpability" as it related to the City ordinance. 173 F.3d at 625. The Court therefore held that "although the gravity of the plaintiffs' offense is not high compared to that of persons who themselves place illegal items in their vehicles, the plaintiffs may still be held responsible for allowing their vehicles to be misused." *Id.*

Finally, Plaintiffs stress that the Eighth Amendment requires considering "evolving standards of decency." (Dkt. 39 at 20). *See Trop v. Dulles*, 356 U.S. 86, 101 (1958) ("The [Eighth] Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society."). In their Eighth Amendment claim, Plaintiffs challenge only the administrative fine. In the case of Nelson and Gant, that amount was $2,000 and $3,000 respectively. Plaintiffs' citation to non-binding authority, however, does not allow this Court to ignore the binding precedent contained in *Towers'* holding that plaintiffs failed to state an excessive fines claim, particularly where the factual allegations underlying the Eighth

Amendment claim in *Towers* and in this case are so similar. Plaintiffs have failed to state a claim for violation of the Eighth Amendment.

### 3. *Illinois Proportionate Penalties Claim*

Plaintiffs allege that the City's requirement that "innocent owners pay administrative penalties for legal offenses committed by another violates the [Illinois] Proportionate Penalties Clause." (FAC ¶167). As Plaintiffs point out, the *Towers* plaintiffs did not bring a claim under this clause. The Illinois Proportionate Penalties Clause, in Article 1, Section 11 of the Illinois Constitution, provides, "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." IL. Const. art. I, § 11. Plaintiffs argue that the Proportionate Penalties Clause provides broader protection than the Eighth Amendment. (Dkt. 39 at 23).[3]

The Illinois Supreme Court has interpreted the Proportionate Penalties Clause as "provid[ing] a limitation on penalties beyond those afforded by the eighth amendment." *People v. Clemons*, 2012 IL 107821, ¶ 39, 360 Ill. Dec. 293, 303-04 (2012). Although the Illinois Supreme Court recently acknowledged that "it has not spoken consistently on the relationship between our proportionate penalties clause and the eighth amendment" (*People v. Coty*, 2020 IL 123972, ¶ 45 (2020)), the City has not cited authority showing that *Clemons* has been overruled. Therefore, accepting Plaintiffs' factual allegations as true and drawing reasonable inferences in

---

[3] The City contends that the Proportionate Penalties Clause applies only to criminal process, but the City still "assumes (without conceding) for purposes of this motion only that the Illinois Proportionate Penalties Clause applies to the civil administrative penalties at issue here." (Dkt. 34-1, n.6). The City has thus preserved this challenge to Count I.

their favor, the Court finds that Plaintiffs have stated a claim under the Proportionate Penalties Clause of the Illinois Constitution.

**D. Search and Seizure (Counts V and VI)**

Plaintiffs allege that "[t]he City's policy and practice of impounding cars even when someone is present who can safely drive the car away, in addition to the City's refusal to release cars before all fines and all fees are paid, effect unconstitutional seizures in violation of Fourth Amendment to the United States Constitution." (FAC ¶ 230). The City argues Plaintiff's Fourth Amendment claim fails because the Seventh Circuit has held that the Fourth Amendment governs only the impoundment, not the City's subsequent retention of the vehicle post-impoundment.

In *Bell,* 835 F.3d 736, the Seventh Circuit affirmed the dismissal of plaintiffs' Fourth Amendment claim challenging the impoundment of their cars. Plaintiffs argued that Chicago ordinances §§ 2-14-101 (Seized/unclaimed property), 2-14-132 (Impoundment), and 2-14-135 (Impoundment—Towing and storage fee hearing) allowed for warrantless seizures of vehicles and failed to provide a neutral judicial officer to determine probable cause in the post-seizure procedure, and were therefore facially invalid under the Fourth Amendment. *Id.* at 739, 741. The Seventh Circuit reaffirmed its prior holding that "the seizure in Plaintiffs' case and all others under the Ordinances is complete when the officer or agent seizes and impounds the vehicle" and thus the Fourth Amendment "cannot be invoked by the dispossessed owner to

17

regain his property." *Id*. at 741 (citing *Lee v. City of Chi*., 330 F.3d 456 (7th Cir. 2003)).[4]

Plaintiffs argue that *Lee* has been overruled by the Supreme Court's decision in *Manuel v. City of Joliet*. (Dkt. 39 at 35-36). A court in this district recently rejected essentially the same argument: "But *Manuel* involved the seizure and detention of a person. The Court did not suggest that the concept of an unreasonable seizure of property lacks temporal bounds, as Santiago contends; the Court did not mention the word 'property' once in its decision." *Santiago v. City of Chi.,* 2020 U.S. Dist. LEXIS 47335, at *29 (N.D. Ill. Mar. 18, 2020). Therefore the Santiago plaintiff could not "invoke the Fourth Amendment to challenge the City's procedures for disposing of vehicles after they have been towed and impounded." *Id*. at *30. *Lewis v. City of Chi*., 914 F.3d 472, 474 (7th Cir. 2019) and *Williams v. Dart,* 967 F.3d 625 (7th Cir. 2020) (Dkt. 52), cited by Plaintiffs, also involved detention of people, not retention of property.[5]

Plaintiffs argue, as they did before (Dkts. 15, 17) that Illinois courts should have the first opportunity to rule on the question of the application of Illinois' search and seizure clause during the time the property is seized. (Dkt. 39 at 40). This Court already declined to sever and remand the Illinois claims. (Dkt. 23). However, Illinois

---

[4] Although Plaintiffs generally refer to raising both as-applied and facial challenges in their constitutional claims (FAC pp. 38-39), because of the settled Seventh Circuit law, Plaintiffs' Fourth Amendment claims would fail under either theory.

[5] To the extent that Plaintiffs allege that "someone is present who can safely drive the car away" (FAC ¶¶219, 227), that does not bolster Plaintiffs' claim that the officer lacked probable cause to seize the car in the first instance.

courts have analyzed unreasonable seizure claims "essentially identical[ly] with regard to both [federal and state] constitutional provisions." *Jackson v. City of Chi.*, 2012 IL App (1st) 111044, ¶ 45, 975 N.E.2d 153, 167 (2012). Plaintiffs do not offer a reason to depart from that rule. Thus because Plaintiffs fail to state a Fourth Amendment claim, they also fail to state a claim under the search and seizure clause of the Illinois constitution. Plaintiffs' search and seizure claims are dismissed.

**E. Due Process (Counts III and IV)**

Plaintiffs allege that the City violates their due process rights under both the U.S. and Illinois constitutions by (1) forcing innocent owners to pay fines and fees for violations they did not commit; (2) holding Plaintiffs' cars and demanding payment of fines and fees before any final judgment has been entered; and (3) providing inadequate notice and hearing procedures. (*see* FAC pp. 30-35).[6] The City interprets the first challenge as a substantive due process challenge and the second two as procedural due process challenges. The Court agrees with this interpretation, and Plaintiffs do not object this characterization.[7]

---

[6] The Court agrees with the City that although Plaintiffs' complaint generally references bringing facial and as applied challenges, nothing in the ordinances apply on their face to innocent owners only, so the Court interprets the due process claims as as-applied challenges. (FAC pp. 38-39). *See Miller v. Downey*, 915 F.3d 460, 464 (7th Cir. 2019) ("principles of 'judicial restraint' counsel in favor of resolving 'as-applied challenges before facial ones in an effort to decide constitutional attacks on the narrowest possible grounds and to avoid reaching unnecessary constitutional issues'") (citation omitted).

[7] Plaintiffs also do not dispute that the analysis under the federal and state due process clauses is the same. *See People v. One 1998 GMC*, 2011 IL 110236, ¶ 21, 960 N.E.2d 1071, 1079 (2011). The Court's analysis applies to both Counts III and IV.

### 1. Substantive Due Process

Plaintiffs allege that "Chicago's impound system violates due process by requiring innocent Illinoisans to pay fines and fees for the actions of others." (FAC ¶178). The scope of substantive due process is limited. *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 368 (7th Cir. 2019) (substantive due process "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them…The scope of a substantive due process claim is limited.") (citations and quotations omitted). "When a substantive-due-process challenge involves only the deprivation of a property interest, a plaintiff must show either the inadequacy of state law remedies or an independent constitutional violation before the court will even engage in this deferential rational basis review." *Lee*, 330 F.3d at 467 (citations and quotations omitted).

As the City asserts, a similar substantive due process claim was dismissed in *Towers*. *See Towers*, 173 F.3d at 627 ("We do not believe that the substantive component of federal due process prevents a state from imposing the civil penalty of $ 500 on the owner of a vehicle when the owner allows the vehicle to be used by another for illegal activity."). In addition, Plaintiffs have not alleged that state law remedies are inadequate. *See Miles v. Vill. of Dolton*, 2016 U.S. Dist. LEXIS 37983, at *15 (N.D. Ill. Mar. 23, 2016) (substantive due process claim dismissed in part because plaintiff failed to allege inadequacy of state law remedies). The fact that Plaintiffs' procedural due process claim survives in part does not save Plaintiffs' substantive due process claim. *See Adams v. City of Chi. Heights*, 2011 U.S. Dist.

LEXIS 16833, at *16 (N.D. Ill. Feb. 18, 2011) ("procedural due process claim cannot serve as the 'independent constitutional violation' underlying a substantive due process claim") (collecting cases).

Plaintiffs' substantive due process claim is dismissed.

### 2. Procedural Due Process: Holding cars before final judgment

Plaintiffs allege that the City impounds and refuses to release their cars until Plaintiffs pay fines and fees, all before any final judgment has been entered. (FAC ¶¶179, 199). "To plead a procedural due process claim, [plaintiff] must allege a cognizable property interest, a deprivation of that interest, and a denial of due process." *Palka v. Shelton*, 623 F.3d 447, 452 (7th Cir. 2010). The Supreme Court in *Mathews v. Eldridge* set forth three factors for courts to consider in analyzing plaintiff's claim for a violation of procedural due process: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).[8] Deciding whether pre-deprivation process is required involves weighing "the importance of, and harm to, the private interest, the likelihood of interim error, and the governmental interest in a delay." *City of L.A. v. David*, 538 U.S. 715, 717, 123 S. Ct. 1895, 1897 (2003). *See also Miller v. Chicago*, 774 F.2d 188, 191 (7th Cir. 1985) ("pre-

---

[8] The City does not directly address the *Mathews* factors.

deprivation notice and hearing represent the norm and the state must [present] important reasons to justify a departure therefrom.").

The City does not dispute that Plaintiffs have a cognizable property interest. Drawing reasonable inferences from the complaint, Plaintiffs allege that they have a property interest in both the use of their cars and the money they are required to pay before any final judgment. (FAC ¶¶179, 186-86, 189-90, 199, 206-07, 209-10). *See e.g. Santiago*, 2020 U.S. Dist. LEXIS 47335, at *14 (property interest in vehicle); *Roehl v. City of Naperville*, 857 F. Supp. 2d 707, 712 (N.D. Ill. 2012) ("The law is clear that individuals have a property interest in their own money.").

The Court finds that the private interest here is substantial. *See Santiago*, 2020 U.S. Dist. LEXIS 47335, at *18 (private interest "substantial because vehicles can be necessary for day-to-day life and provide the primary means of transportation for many people, particularly the elderly and the disabled.") (citing *David*, 538 U.S. at 717-18); *see also Washington v. Marion Cty. Prosecutor*, 916 F.3d 676, 679 (7th Cir. 2019) ("Obviously, vehicle forfeitures are economically painful. Many Americans depend on cars for food, school, work, medical treatment, church, relationships, arts, sports, recreation, and anything farther away than the ends of their driveways. Cars extend us. Cars manifest liberty."). And considering "the length or finality of the deprivation" (*Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434 (1982)), the complaint alleges that the first chance a car owner has to get her car back is after the preliminary hearing, which can take more than two weeks to occur. (FAC ¶¶69-71).

And in this case, the deprivation has been final—the City disposed of Nelson's car (FAC ¶18) and Gant's and Byrd's cars remain in the impound lot. (*Id.* ¶¶15, 21).

As to the second *Mathews* factor, there is some risk of an erroneous deprivation in towing and impounding a car. Unlike the determination that a car is illegally parked (*Sutton v. Milwaukee*, 672 F.2d 644, 646 (7th Cir. 1982)), a police officer's determination that a car contains drugs or that the driver is driving on a suspended license is not as "cut and dried."[9] The City has not addressed the value (or cost) to additional or substitute procedural safeguards. This element can be developed at later stages of the litigation, but at this stage, the second *Mathews* factor weighs in Plaintiffs' favor.

Finally, as to the City's interest, the Court finds that this factor weighs in favor of Plaintiffs. The City's purported interest in ensuring that it will collect "the monies that it *may be* owed" (Dkt. 34-1 at 28, emphasis added) does not outweigh Plaintiffs' interest in the use of their vehicles and in retaining access to their money. *See Simpson v. Brown Cty.*, 860 F.3d 1001, 1009 (7th Cir. 2017) (finding plaintiff stated a claim for a violation of procedural due process in part because problem was not "so serious and so urgent as to justify summary action by the County, without an opportunity for [plaintiff] to be heard."). Moreover, as Plaintiffs allege, any judgment

---

[9] Indeed, in this case, although the details will presumably be developed in discovery, the complaint alleges, and the City does not dispute, that the City dropped criminal charges and moving violations against Gant's friend who drove his car (FAC ¶ 21) and criminal charges against Mr. Tillis, who drove Nelson's car, were also dropped. (*Id.* ¶ 134).

entered against individuals attaches to them personally, indefinitely, and with interest, independent of whether they have their vehicles. (FAC ¶¶ 87-90).[10]

The City relies on *Miller v. Chicago*, 774 F.2d 188, to argue that the Seventh Circuit has upheld requiring a car owner to pay storage fees as a condition of releasing the car even though it was stolen by a third party. Several factors distinguish *Miller* from this case. *Miller* involved recovered stolen cars and was decided on summary judgment. The Court held that the deprivation of the car was not of "prime significance" because the impounding was temporary—only a few days. *Id.* at 192. The Court further reasoned that the thief caused the deprivation, not the City, and in fact the City was responsible for *ending* the deprivation. *Id.* at 194. In addition, the determination of whether the car was reported stolen was "cut and dried", and the City had an interest in removing the vehicles to a safe place because stolen vehicles pose "special dangers to the public." *Id.* at 192-93. Finally, *Miller* found it "noteworthy that the defendants provide owners of the stolen vehicles with an opportunity to obtain release of the vehicle by making a deposit of $ 25, an amount less than the towing and storage charges." *Id.* at 197. Here, Plaintiffs must pay the penalty assessed for the ordinance violation committed by someone else, plus the

---

[10] The City's argument that "[r]elease of the vehicle pending a hearing has nothing to do with whether the vehicle was used in violation of the law" (Dkt. 34-1 at 26) undermines the position that the City has an interest in holding the vehicle that outweighs the Plaintiffs' interest in having access to the vehicle pending the administrative hearing process.

accumulated amount of towing and storage fees, plus interest, before their vehicle will be released.[11]

The City's reliance on *United States v. Von Neumann,* 474 U.S. 242 (1986) is also not persuasive. Plaintiffs here argue that the harm to the private interest is great because they are denied access to their cars and are required to pay a fine because someone else committed an offense. The offense in *Von Neumann* (failure to declare a car to U.S. customs officials) was committed by defendant himself. *See also Smith v. City of Chi.*, 524 F.3d 834, 837 (7th Cir. 2008) (distinguishing *Von Neumann* because it "involved proceedings for remission or mitigation under U.S. customs laws, not forfeiture under state law", "the customs laws allowed procedures for Von Neumann to obtain a speedy release of his automobile prior to the actual forfeiture hearing," and he could file a motion for return of the property).

The Court finds that, at this pleading stage, the "the importance of, and harm to, the private interest" is substantial; there is some "likelihood of interim error", and "the governmental interest in a delay" is minimal. *See David*, 538 U.S. at 717. Accordingly, accepting Plaintiffs' factual allegations as true, and keeping in mind that due process "is not a technical conception with a fixed content unrelated to time, place and circumstances" and "is flexible and calls for such procedural protections as

---

[11] Further, *Towers* does not foreclose this due process claim because the *Towers* plaintiffs did not bring a pre-deprivation due process claim. In addition, both plaintiffs in *Towers* were able to recover their cars. *Towers*, 173 F.3d at 622. *See Bell*, 835 F.3d at 737 (in case involving challenge to impoundment ordinance, although Fourth Amendment challenge failed, explaining that plaintiffs were not without a remedy because "the Due Process Clause of the Fourteenth Amendment can be used to challenge post-seizure procedures and the City's continued retention of [plaintiff's] vehicle.").

25

the particular situation demands" (*Mathews*, 424 U.S. at 334 (internal citations and quotations omitted)), the Court concludes that Plaintiffs have stated a procedural due process claim based on lack of pre-deprivation process.

### 3. Procedural Due Process: Hearing Procedures

Plaintiffs challenge the sufficiency of the hearing procedures themselves. (FAC ¶¶ 180, 200). The City argues that it is not unconstitutional to require in-person attendance at hearings. Plaintiffs fail to cite any authority for the proposition that procedural due process is violated by requiring in-person attendance and multiple appearances at administrative hearings. Plaintiffs' due process claims based on the hearing procedures are dismissed.

### 4. Procedural Due Process: Notice

Plaintiffs allege that the City fails to provide adequate notice to car owners that (1) their cars have been impounded, (2) fees are immediately accruing, and (3) their cars will be disposed of. "The purpose of notice under the Due Process Clause is to allow an interested party to challenge the deprivation of a protected liberty interest before it occurs." *Matamoros v. Grams*, 706 F.3d 783, 790 (7th Cir. 2013).

The City has several arguments for why the notice claim should be dismissed: (1) Plaintiffs allege only that the Davises did not receive a letter notifying them of the impoundment; (2) if notice was not sent, it was a "random and unauthorized" departure from the City's policy; (3) Plaintiffs did not allege they were injured by the lack of notice of accruing fees; and (4) the ordinance itself provides constitutionally sufficient notice of the accrual of the fees.

The Court initially addresses the City's argument that Plaintiffs' lack of notice claims fail to state a claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). (Dkt. 34-1 at 33). The City argues that Nelson and Gant fail to allege that the unconstitutional conduct was caused by any City policy or practice. The Court does not agree. The complaint challenges the City's "policy and practice of providing constitutionally inadequate notice to car owners whose vehicles have been impounded and to car owners whose vehicles will be disposed of." (FAC ¶4). Plaintiffs allege that the City regularly ignores its notice obligation and "fails to notify vehicle owners within ten days of the impound", and the "City maintains a persistent and widespread practice of providing insufficient notice to vehicle owners whose cars have been impounded." (*Id.* ¶¶36, 37). The Court can infer the same challenge to the City's policy and practice of providing insufficient notice that an individual's car is being disposed of. (*See id.* ¶¶80-81, 180). This is enough at this stage. *See White v. City of Chi.,* 829 F.3d 837, 844 (7th Cir. 2016) (courts do not apply a "heightened pleading standard" to civil rights cases alleging municipal liability); *Santiago*, 2020 U.S. Dist. LEXIS 47335, at *27 (plaintiff "plausibly alleged the existence of a municipal policy that caused a constitutional deprivation.").[12]

---

[12] The cases the City cites in its reply brief are distinguishable. In *Carmona v. City of Chi.*, 2018 U.S. Dist. LEXIS 49117, at *9 (N.D. Ill. Mar. 26, 2018), the court held that the Monell claim was based on a vague and broadly alleged custom that did not "suggest a failure to discipline [officers] beyond [plaintiff's] particular case." Plaintiffs here allege that the City's policy and practice directly impacted Nelson and Gant plus many other individuals in Chicago. And Plaintiffs' allegations about the City's policy and practice are more specific and detailed than the conclusory reference in *Cherry v. Cook Cty. Sheriff's Office*, 2016 U.S. Dist. LEXIS 165369, at *5 (N.D. Ill. Nov. 30, 2016), to defendants' actions being "under color of law, pursuant to policies, customs, practices, rules, regulations, ordinances, statutes, and/or usages of the State of Illinois or a political subdivision thereof."

Next, the City's argument that only the Davises did not receive notice of the impoundment is not convincing. The complaint shows that Nelson learned her car had been impounded from her granddaughter (FAC ¶ 130) and Byrd only learned about the impoundment when he went to the Chicago Police Department (*Id.* ¶119). The complaint does not specify whether Gant received notice from the City. The Court can therefore reasonably infer that most or all of the Plaintiffs did not receive notice from the City of the impoundment. Even so, "[a] plaintiff who has received actual notice may nonetheless challenge the procedural sufficiency of the notice." *Santiago*, 2020 U.S. Dist. LEXIS 47335, at *15 (citing *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 13-15, 98 S. Ct. 1554, 56 L. Ed. 2d 30 (1978)).

Second, as to the City's argument that the alleged lack of notice of impoundment or disposal was "random and unauthorized", such situations "are relatively rare." *Simpson,* 860 F.3d at 1007. *See id.* at 1008 ("[plaintiff's] third amended complaint, construed in the light most favorable to him, does not allege 'random and unauthorized' actions by County officials."). Here, the complaint alleges that inadequate notice of impoundment and disposal are common practices. Therefore the City's argument about the availability of an adequate post-deprivation remedy is not availing because "[w]ithout the shield of a 'random and unauthorized' defense, the County's actions must be evaluated pursuant to the standard *Mathews v. Eldridge* factors." *Simpson,* 860 F.3d at 1008. Plaintiffs' procedural due process challenges based on inadequate notice that their cars will be impounded or that their cars will be disposed of survive.

The Court agrees with the City, however, that Plaintiffs cannot claim lack of notice of towing and storage fees when the City ordinances specify those fees. *See Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 600 (7th Cir. 2016) (statute or regulation is adequate notice in and of itself as long as it is clear). But this is different from Plaintiffs' allegation of inadequate notice about their vehicles being impounded or destroyed. In *Cochran,* 828 F.3d 597, plaintiff alleged that he did "receive[] notice of toll violations and that the notice conveyed his right to a hearing." Still he contended that the toll signage should have provided notice of how the "toll system worked such that he could have avoided a fine in the first place." Here, Plaintiffs are not claiming that they were unaware of what the ordinances prohibited or the consequences. Plaintiffs claim that they did not receive adequate notice that their vehicles were being impounded or destroyed—notice *required* by the City's ordinance. MCC § 2-14-132(b)(1).

Accordingly, Plaintiffs' procedural due process challenges to the hearing procedures and to the notice of fees are dismissed. Plaintiffs' procedural due process challenges based on lack of pre-deprivation process and inadequate notice that their cars will be impounded or disposed survive. Plaintiffs' substantive due process claims are dismissed.

## IV.     Conclusion

For the stated reasons, the City of Chicago's motion to dismiss [33] is granted in part and denied in part. Counts II, V, and VI are dismissed. Counts III and IV are dismissed to the extent that they allege a violation of Plaintiffs' substantive due

process rights or a violation of Plaintiffs' procedural due process rights as it relates to the hearing procedures or notice of fees. Because Byrd's state law claims survive, his claim in Count VII survives. Therefore, the remaining claims are Counts I, III, IV, and VII, as set forth in this opinion.

E N T E R:

Dated: August 21, 2020

_____
MARY M. ROWLAND
United States District Judge