**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JEROME DAVIS, et al.,** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 19-CV-3691** |
| | ) | **Honorable Mary Rowland** |
| **CITY OF CHICAGO,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS'
<u>MOTION TO COMPEL</u>**

## INTRODUCTION

All that remains of this suit following the Court's ruling on the City's Motion to Dismiss are Plaintiffs' Proportionate Penalties Clause Claim (Count I); Plaintiffs' Due Process Claims challenging the City's alleged policy of holding cars until all fines and fees are paid, before a final judgment has been entered, and the City's notice practices (Counts III and IV); and Plaintiff Spencer Byrd's state law claims related to his personal property (Count VII). To date, the City has responded to 14 of Plaintiffs' 21 interrogatories and 9 of Plaintiffs' 13 Requests for Production ("RFPs"). But following substantial dialogue with Plaintiffs and the tendering of supplemental responses, the remaining requests are unduly burdensome to comply with and irrelevant to any claims or defenses in this suit, and thus not proportionate to the needs of the case. Further, Plaintiffs' effort to obtain the identities of potential class members is premature and an improper use of discovery. For those reasons and others detailed more fully below, Plaintiffs' motion to compel should be denied.

## LEGAL STANDARD

Rule 26 requires that discovery be both relevant and proportional to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Motorola Sols., Inc. v. Hytera Commc'ns Corp., 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019) (citation omitted). The party requesting discovery bears the initial burden of establishing its relevancy, Eternity Mart, Inc. v. Nature's Sources, LLC, No. 19-CV-02436, 2019 WL 6052366, at *2 (N.D. Ill. Nov. 15, 2019) (citing Rennie v. Dalton, 3 F.3d 1100, 1110 (7th Cir. 1993)), and that it is not unduly burdensome and is proportionate to the needs of

1

the case, <u>Motorola Sols., Inc.</u>, 365 F. Supp. 3d at 925 n.6.  Additionally, when discovery is

cumulative or not proportionate, "the court must limit the frequency or extent of discovery."

<u>Hespe v. City of Chicago</u>, No. 13 C 7998, 2016 WL 7240754, at *3 (N.D. Ill. Dec. 15, 2016)

## ARGUMENT

I.      **Plaintiffs Are Not Entitled To Additional Discovery Concerning The Financial Aspects Of Impoundments.**

In Part I of their brief, Plaintiffs seek additional discovery on the financial costs and

benefits to the City of impounding vehicles.  Specifically, Plaintiffs seek (a) the amount of

administrative penalties the City has collected pursuant to MCC § 2-14-132; (b) the amount

spent by the City to administer the impoundment system and the amount "netted" by the City

from disposing of impounded vehicles; and (c) a description of alternatives considered by the

City to retaining impounded vehicles after a preliminary hearing.  The City has already

responded (or, in the case of the first category, intends to respond) to each of these lines of

discovery in part, but the additional discovery is not proportionate to the needs of the case.

a.      **The City has produced information in response to Plaintiffs' requests, but additional production would be unduly burdensome.**

In response to Plaintiffs' *first category* of discovery above – identifying the amounts of

administrative penalties the City has collected pursuant to MCC § 2-14-132 (Interrog. 3) – the

City has expended substantial time and resources attempting to collect and process information

that will yield the total amount of administrative penalties collected during the relevant time

period for all violations of MCC § 9-80-240 and MCC § 7-24-225, which are the two ordinances

establishing the particular violations that Plaintiffs' vehicles were impounded under.  The City

plans to produce that number when available.[1]  However, identifying the amounts collected for

---

[1] The City maintains that this aggregate information is not relevant to any claim in this case, but is working to produce it in the interest of compromise.  However, because this review is not complete and is

the other twenty-two underlying MCC violations that are subject to MCC § 2-14-132 is unduly

burdensome, because it would require a manual review of payment accounts similar in scope to

the months-long review the City has undertaken with respect to MCC § 9-80-240 and MCC § 7-

24-225, and because Plaintiffs were not cited under these other ordinances.[2]

In the *second category* of discovery, Plaintiffs seek the amount of money the City has

spent on all impounds since April 29, 2017 (Interrog. 17); the amount of money the City has

"netted" through disposal of impounded vehicles since April 29, 2017 (Interrog. 19); and

contracts and agreements for the collection of impoundment related debt (RFP 5).

As to amounts spent on impounds, the City directed Plaintiffs to the City's contract with

URT United Road Towing, Inc. ("URT"), see Dkt. 74-1 at Page ID 721. URT operates much of

the City's towing and impoundment program, and the contract identifies the amounts the City

pays to URT. The City also identified the specific dollar amounts it paid to URT in 2019, 2020,

and through May 31, 2021, for services related to vehicles impounded pursuant to MCC § 2-14-

132. See Dkt. 74-1 at Page ID 749. This production therefore provides substantial information

as to the City's costs for impoundments. Plaintiffs fault the City for not producing these URT

figures for 2017 and 2018 in its response to Interrogatory 17, but doing so is unduly

---

labor intensive and complex, the City reserves its right to renew its objection to producing this
information should production prove more even difficult than currently believed.

[2] Throughout their motion, Plaintiffs assert that the City's burdensomeness objections should be rejected
as "boilerplate." See, e.g., Dkt. 73 at 5. However, Plaintiffs cannot claim the City has never previously
disclosed details regarding the burdensomeness of these requests. The City noted in its June 28, 2021,
email that it was continuing to work with is client departments on the issue of burden. Dkt. 74-1, Page ID
772. Moreover, in the City's August 17, 2021 letter – to which Plaintiffs never responded – the City
provided additional detail on the burden with respect to Interrogatory 3 and restated its burdensomeness
objections regarding the other requests. Plaintiffs at no time requested additional information regarding
burden in any letter or telephone conference. And it is self-evident that collecting and producing tens of
thousands of records and documents is burdensome.

burdensome.[3]  In contrast, the City did include these years in its response to Interrogatory 18, in which it provided the specific dollar amount of monies *received* from URT from April 27, 2017 and May 31, 2021, because that information did not present these same issues of burden.

Plaintiffs also fault the City for only providing the amount it paid to URT for administering impounds, and not the "total" amount of money "spent on all impounds."  Dkt. 73 at 7.  But, as the City explained, this is too vague a request to reasonably respond to, because any number of things could be deemed as being an expenditure related to impounding vehicles.  For instance, the request could encompass the City's costs of owning vehicle storage lots, employee salaries, and other operating costs for each of the City departments involved in the impound process, such as the City's Police Department ("CPD"), its Department of Streets and Sanitation ("DSS"), and its Department of Administrative Hearings ("DOAH").  Within these departments, the share of the costs attributable to impounds under MCC § 2-14-132 would somehow have to determined – for instance, the City would have to determine how many hours DSS employees spend on matters relating to section 2-14-132 impounds versus all of the other Municipal Code matters that are heard and processed by DSS.  This is a burdensome and time-consuming task.

Similar problems plague Plaintiffs' request for the amounts the City has "netted" from the disposal of vehicles since April 29, 2017.  Plaintiffs have not defined "net" – they have not indicated which set of monies comprises the relevant amount received by the City, or the relevant amount paid by the City.  One can only produce a "net" once those two buckets are known.  And, as just explained, it is burdensome for the City to identify the full amounts

---

[3]  Prior to 2019, the City tracked the amount of money the City paid URT for its services under the contract, but did not specifically track payments for each type of impound and offense.  Thus, determining how much the City paid to URT for the specific types of impounds at issue here for 2017 and 2018 would require a manual review of impound records to determine the cost attributable to each violation type.

attributable to operating section 2-14-132 impounds. But Plaintiffs are not without information bearing on this question. The City identified amounts paid to and received from URT. From these figures, one can compute a partial net for the URT monies, which the City identified for Plaintiffs (while also noting the limitations of that number). See Dkt. 74-1 at Page ID 750-51.

As to the *third category* of discovery, Plaintiffs seek whether City "policymakers" have considered alternatives to retaining impounded vehicles after the preliminary hearing (Interrogs. 15 & 16). In response, the City indicated that the City Council is the policymaking body concerning the ordinance provisions challenged here, and that any alternatives duly considered by the City Council would be part of the official legislative record, which is publicly available.

Further response beyond this is not warranted. Plaintiffs argue that "policymakers" encompasses City officials or employees beyond the City Council, relying on caselaw regarding municipal liability under Section 1983. See Dkt. 73 at 8-9 (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986)). But that caselaw does not warrant a broader discovery response. To be sure, there are certain limited instances when individuals are classified as "policymakers" for purposes of Monell liability under Section 1983. But here, Plaintiffs' challenge to the holding of vehicles after a preliminary hearing takes issue with a policy adopted by the City Council in an ordinance. In that instance, the relevant "policymaker" is the City Council, not individual officials. See Rasche v. Vill. of Beecher, 336 F.3d 588, 601 (7th Cir. 2003) (generally "the policymaking authority in the city structure will be the city council"). In addition, discovery into whether individual City officials considered alternatives outside the official legislative record would be unduly burdensome, as it would require canvassing scores of individuals.

   **b.      Additional response is not proportionate to the needs of the case.**

As explained above, the additional discovery sought by Plaintiffs going to the fiscal and administrative aspects of holding vehicles after the preliminary hearing is burdensome or

otherwise cannot be responded to as a practical matter.  But in addition, any further response is disproportionate to the needs of the case, because these lines of inquiry are not relevant.[4]

For example, Plaintiffs contend that information about the City's costs and "net" from impounds is needed to test the City's statement that one of the benefits from retaining vehicles after the preliminary hearing is that retention "can help ensure" that the City receives the monies owed for the underlying offense and towing and storage costs.  See Dkt. 74-1 at Page ID 705-06; Dkt. 73 at 6.  But whether holding vehicles helps the City receive these monies is not a matter subject to second-guessing by the Court, and therefore not a proper subject for factual development through discovery.  Holding vehicles in this way is a policy determination made legislatively by the City Council (as reflected in MCC § 2-14-132), and a challenge to it therefore sounds in substantive due process rather than procedural due process.  And as a substantive due process matter, it is subject to mere rational basis review, Lee v. City of Chicago, 330 F.3d 456, 467 (7th Cir. 2003), which means that the merits of the ordinance are "'not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data,'" National Paint & Coatings Association v. City of Chicago, 45 F.3d 1124, 1127 (7th Cir. 1995) (quoting FCC v. Beach Communications, Inc., 508 U.S. 307, 315 (1993)).[5] Rational basis review, moreover, is amply satisfied here, because it is self-evident that holding a vehicle may spur its owner to pay the amounts owed.  See Saukstelis v. City of Chicago, 932

---

[4]  To the extent that the City produced information in response to Plaintiffs' requests, that does not mean that further production is required or that the City conceded relevance.  See Dkt. 73 at 6.  The City's production was made in an effort to be cooperative in discovery and to eliminate the need for Court intervention.  At this point, however, the burden, vagueness, and lack of proportionality of Plaintiffs' continued requests renders further response by the City inappropriate and unwarranted.

[5]  Rational basis review is "a paradigm of judicial restraint," Beach Commc'ns, Inc., 508 U.S. at 314. Under the test, distinctions drawn by the City bear "a strong presumption of validity" and "must be upheld . . . if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."  Id. at 313-14. Courts are not to judge the "wisdom, fairness, or logic" of the City Council's policy judgment.  Id. at 313.

F.2d 1171, 1174 (7th Cir. 1991) ("It is not loony . . . to conclude that the threat (and use) of the boot will prod owners to pay attention to tickets.  It is certainly permissible for the government to induce them to do so.  Self-interest concentrates the mind."); People v. Jaudon, 307 Ill. App. 3d 427, 447 (release of vehicles prior to payment "would clearly undermine the City's ability to recover").  How much the City ultimately spends on impounds, or whether it has a positive or negative "net" after vehicles are disposed of, is therefore not germane.  Regardless of what those numbers are, the City Council's judgment that holding a vehicle can induce the owner to pay is rational.  See National Paint, 45 F.3d at 1127 (explaining that the effectiveness of the City's ban on spray paint ban, and "[h]ow much" it reduced spray paint use, were irrelevant under rational basis review because "thoughtful people could conclude that there will be some reduction").  See also Dkt. 26-1, at 20-21.

For the same reasons, further response to RFP 5 is not warranted.  That request seeks agreements and contracts for the collection of impoundment-related debt.  The City produced as a sample a typical agreement it has with an outside collection firm, while redacting proprietary information relating to payment terms.  Production of the rest of the contracts (or their proprietary payment terms) is not relevant to the rationality of whether holding vehicles can help ensure that the City receives the amounts owed.

Plaintiffs contend that the fiscal aspects of the impound program and whether the City considered alternatives to holding the vehicles after a preliminary hearing are relevant under the balancing test of Mathews v. Eldridge, 424 U.S. 319, 335 (1976) – specifically, the factor going to "the government's interest, including the burdens to the City of alternatives."  Dkt. 73 at 9. But the Mathews factors are used to determine whether sufficient procedural protections are provided for a plaintiff to contest the factual basis for a deprivation – i.e., whether the

7

deprivation was erroneous – under the governing statutes or rules that authorize a deprivation when certain conditions are met. (Here, those statutes are MCC §§ 7-24-225 & 9-80-240, which create the underlying offenses for which Plaintiffs' vehicles were impounded.) The second and third Mathews factors address "the risk of an *erroneous deprivation* of [plaintiff's interest] interest *through the procedures used*, *and the probable value, if any, of additional or substitute procedural safeguards*; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens *that the additional or substitute procedural requirement* would entail." Mathews, 319 U.S. at 335 (emphasis added). "[T]hese concerns" are weighed by courts to "determine whether a State has met the fundamental requirement of due process — the opportunity to be heard at a meaningful time and in a meaningful manner." Los Angeles v. David, 528 U.S. 715, 717 (2003) (quoting Mathews, 319 U.S. at 333) (cleaned up). This opportunity to be heard applies to the factual predicate that is the basis for the deprivation; it does not apply to matters that do not bear on whether the predicate violation occurred. See Connecticut Dep't of Public Safety v. Doe, 538 U.S. 1, 4, 7-8 (2003).

Here, the act of deprivation subject to procedural due process is the decision to impound the vehicle in the first place, and the preliminary hearing offered by the City (as well as the additional, full merits hearing) are part of the procedures afforded to allow the owner to meaningfully be heard on that question, by contesting whether the vehicle was used in violation of the City ordinance subjecting the vehicle to impoundment. Holding the vehicle after the preliminary hearing, in contrast, is merely the consequence when the owner is unsuccessful at these hearings. Holding the vehicle is not part of the procedures and alternatives relevant under Mathews, because it is not a procedure used to determine whether the factual basis for the impoundment was correct or erroneous. See Towers v. City of Chicago, 173 F.3d 619, 629 (7th

Cir. 1999) (where plaintiffs did not allege facts relevant to whether seizure of vehicles comported with City's policy, "there was nothing to contest at a preliminary hearing and therefore no deprivation of due process in its absence"). See also Tate v. District of Columbia, 627 F.3d 904, 908 (D.C. Cir. 2008) (citing Mathews, 424 U.S. at 333, and explaining that "[plaintiff] had meaningful notice of her infractions [leading to the impoundment and holding of her vehicle for potential auction] and a series of hearings to contest them").[6]  Whether there are alternative ways for the City to help ensure that it collects the monies owed other than by holding vehicles after the preliminary hearing is irrelevant under Mathews, because it does not bear on the question whether the vehicle was used illegally under the City ordinances authorizing impoundments for particular violations of law.

## II.     Plaintiffs Are Not Entitled To Additional Discovery Concerning Notices Of Impoundment And Disposal.

In Part II of their motion, Plaintiffs seek production of an enormous volume of notice documents substantially identical to those notices already produced, as well as the names and addresses of tens of thousands of non-parties.  Specifically, Plaintiffs request *all* notices of impoundment (RFP 10) and notices of disposal (RFP 11) the City has issued since April 29, 2017.  Plaintiffs also seek all documents related to undelivered notices of impoundment (RFP

---

[6] The Seventh Circuit has analyzed the procedures for contesting whether the triggering act subjecting the vehicle to impoundment occurred (a procedural due process issue) separately from the policy decision of what is the appropriate consequence for such an impoundment (a substantive due process issue).  See Towers, 173 F.3d at 627-29 (analyzing, as a matter of procedural due process, whether City provided sufficient notice of opportunity to contest the basis for the impoundment at a preliminary hearing); id. at 626-27 (analyzing, as a matter of substantive due process, whether imposition of fine on "innocent owners" of impounded vehicles is lawful); Miller v. City of Chicago, 774 F.2d 188, 190-95 (7th Cir. 1985) (analyzing, as a matter of procedural due process, whether City was required to give notice prior to impounding stolen vehicle); id. at 195-96 (analyzing against the rational basis standard whether holding an impounded stolen vehicle until the owner pays the amounts due comports with due process).

12) and disposal (RFP 13) the City has issued since April 29, 2017, as well as the number of these notices returned as undelivered (Interrogs. 20 and 21). These requests are improper on multiple bases, including burdensomeness, proportionality, and relevance.

### a. The production and counting of tens of thousands of notices given to non-parties is irrelevant, burdensome, and not proportionate to the needs of the case.

The City produced all the notices of impoundment and disposal that were mailed to or otherwise provided to Plaintiffs, such as being personally handed to them or the drivers of their vehicles. Additionally, the City has, in response to interrogatories, described its process for mailing notices of impoundment and disposal to vehicle owners, drivers, and lienholders, as well as its process with respect to notices returned as undelivered. But Plaintiffs now seek to compel production of all notices of impoundment or disposal the City sent or provided to *all other* owners, drivers, and lienholders. This universe of documents numbers in the tens of thousands.

Plaintiffs assert that that these notices are relevant because they "go[] to Plaintiffs' claim that the City's notices routinely fail to satisfy due process," for Plaintiffs claim that "the City maintains a policy of providing notices not reasonably calculated to reach their targets." Dkt. 73 at 9 (internal quotations omitted) (citation omitted). But as to the notices of impoundment and disposal (RFPs 10 & 11), Plaintiffs provide no explanation as to how gathering and producing thousands of notices that were sent to non-parties (and substantively the same as the notices issued to Plaintiffs and already produced) would aid in making this determination. There is no dispute that the City's process is to mail notices to the addresses of registered owners, lienholders, and drivers. There is no additional value from production of these documents.

On the flip side, producing these notices would be extremely burdensome. The City provides written notice of impound in at least three separate ways. First, a written notice is provided to the driver—which is often the owner—at the time of impound. Second, a mailed

notice of impound is send via certified mail to the registered owner and lienholders by either DSS or CPD, depending on where and why the vehicle was impounded. Third, if an individual appears for a hearing, as Mr. Gant did, they will again be served a notice of impoundment and will sign a receipt of such notice. See, e.g., Ex. A, Gant Receipt of Notice of Impound. Records of each of these notices are kept in different locations by different custodians. Gathering all of these documents for thousands of individuals who are not currently and may never be parties in this case is unduly burdensome and not proportionate to the needs of the case.

As to the notices of impoundment and disposal that were returned as undelivered (RFPs 12 & 13, and Interrogatories 20 & 21), no Plaintiff has standing to challenge the City's handling of returned notices, because they were not injured by any alleged failure of a mailed notice to reach them. Each Plaintiff knew of their impound either at the time of impound (in the case of Mr. Byrd), or the same day as the impound (in the cases of Ms. Nelson and Mr. Gant). See, Ex. B, (Nelson Interrog. Resp. 3), Ex. C (Byrd Interrog. Resp. 3) and Ex. D (Gant Interrog. Resp. 3). And as for notice of disposal, the City did not dispose of Mr. Byrd's or Ms. Nelson's vehicle,[7] and Mr. Gant received numerous notices of disposal, several of which he produced through discovery. See, e.g., Ex. E, Plaintiff's Production Number 00093. Because Plaintiffs had notice contemporaneously with the impound, and before any notice could have been mailed and returned, and Mr. Gant received personal notice of disposal multiple times before his vehicle was disposed of, no Plaintiff could have been injured by the City's alleged practices regarding the handling of mailed of notices that were returned.

But even if Plaintiffs had standing, further discovery on returned notices is burdensome and disproportionate to the needs of the case. The returned notices that the City still has are kept

---

[7] The Cook County State's Attorney disposed of Ms. Nelson's vehicle through civil forfeiture, a process Ms. Nelson had notice of and participated in. Mr. Byrd's car is still held at a City owned impound lot.

11

in multiple locations, including off-site storage.  Producing those individual returned notices, or computing the total number of returned notices that the City has (see Interrogatories 20 & 21) would in many cases require a burdensome file-by-file review.  In contrast to the burden of production, there is little relevance.  The City has stated that it does not take further steps regarding notices that are returned as undelivered, and producing copies of the returned notices, or identifying the total number of returns, adds nothing to this point.  Because this proposition is not in dispute, any further discovery on this process is merely cumulative and should not be permitted. See Fed. R. Civ. P 26(b)(2)(c)(i).

**b.  The discovery is not necessary for class certification and class identification is premature.**

Producing all the notices of impoundment and disposal sent to non-Plaintiffs also is not needed for establishing numerosity for class certification purposes, because the City has already indicated the numbers of vehicles impounded and disposed of during the relevant time periods, numbers that are in the tens of thousands.  See Response to Interrogs. 1 & 5.  Plaintiffs assert, without citation, that they are entitled to the actual notices themselves because they are entitled to "primary-source evidence" to establish numerosity.  But this does nothing to show that producing these documents is proportional to the needs of the case, or that the Plaintiffs are unable to establish numerosity based on the information the City already provided.[8]

The only purpose these requests could serve is to give Plaintiffs the personal identifying information of other potential plaintiffs or putative class members.  But discovery is not to be turned "into 'a tool to identify potential new clients.'"  Swelnis v. Universal Fid. L.P., No. 2:13-

---

[8] The City is not conceding that these facts are sufficient to establish numerosity for certification purposes, only that these facts represent the identical information Plaintiffs purport to hope to learn from these outstanding requests, and thus these requests are improperly cumulative.

CV-104-PRC, 2014 WL 1571323, at *2 (N.D. Ind. Apr. 17, 2014) (quoting 2 McLaughlin on Class Actions 11:1 (10th ed.)). And as to class member identification, that too is not generally the proper subject of discovery, particularly before a class is certified. See id. at *3 (denying a pre-certification request for names and addresses of putative class members where the stated purposes was to establish numerosity). Class member identification is properly addressed by the mechanics of Rule 23 itself, not Rule 26. See Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 352 (1978). Thus, Plaintiffs' argument that the Court has not bifurcated discovery is a red herring – identification of the individual putative members is not a proper use of Rule 26 discovery. While there are limited exceptions to this rule, such as where identifying putative class members is essential for establishing some element of a claim, that is not the case here.[9]

**III.    Plaintiffs Are Not Entitled To The Names And Addresses Of Thousands Of Non-Parties As To Other Aspects Of The City's Impoundment Practices.**

Interrogatories 6, 12 and 13 respectively seek the names and addresses of individuals against whom the City entered a default judgment for failing to appear at an initial impoundment hearing, whose vehicles were impounded when being driven by someone else, and whose vehicles were disposed of. These requests do not seek relevant information and are otherwise unduly burdensome and not proportionate. Plaintiffs assert that the names and addresses of other people with default judgments (Interrog. 6) is relevant because Ms. Nelson had a default judgment entered against her. However, that default was vacated at her request and she had a subsequent full merits hearing. And no Plaintiff claims that they were injured by the mere entry of default. The entry of default judgments is not relevant to any claim before the Court.

---

[9] In addition, many of the vehicles in these additional notices were used to engage in criminal activity or otherwise violate the law. The City objects to needlessly disclosing the identities and addresses of the individuals connected to these activities when doing so is unnecessary at this stage and not probative of any claim or defense in this case. Requiring production of redacted documents, while perhaps alleviating concerns regarding confidential information, would greatly increase the burden of production.

For Interrogatory 12, Plaintiffs assert that the names and addresses of individuals whose vehicles were impounded when being driven by someone else is relevant to their Proportionate Penalties claim because it goes to "[t]he existence and prevalence of innocent people punished by this system. . ." Dkt. 73 at 13. However, the request is overbroad, because it captures individuals who are indisputably not innocent because they knowingly allowed their vehicles to be used in illegal activity. Moreover, Plaintiffs do not require this information to establish the City's process with respect to how such situations are treated, as their Proportionate Penalties claim challenges an ordinance which speaks for itself, not some uncertain practice.

As to Interrogatory 13, Plaintiffs say that information as to all disposals is relevant because their due process claim does not apply only to "innocent" owners, but Plaintiffs do not explain how the names and addresses of individuals whose vehicle were disposed of are relevant to any claims in this case. And as discussed above, none of the current Plaintiffs in this case have standing to challenge the City's notice practices regarding disposal. The City is left to surmise that the continued effort to seek this discovery is an effort to identify a new potential plaintiff that may have standing, which is not a proper use of discovery.

In contrast to the lack of relevance of any of this information, producing the information is unduly burdensome. Responding to Interrogatory 6 would require manual review of thousands of dockets. To identify whether the driver of the impounded vehicle was someone other than the owner, Interrogatory 12 would require locating the initial impound report, comparing that to the LEADS report for owner information to see if they are different, and then redacting personal information of the drivers for each of the responsive documents. And for owners of vehicles that were disposed of, a similar manual review of all files would be necessary to determine who the registered owner is of each vehicle. For all these reasons, the discovery should be denied.

IV.     **Interrogatory 7 Is Overbroad, Vague, And Unanswerable In Its Current Form.**

Finally, Interrogatory 7 asks the City to "Describe each step of the process by which the City administers an impound, from the moment the vehicle is seized to the resolution of the vehicle following the entry of final judgment." Dkt. 73 at 3. The City objected to this interrogatory on numerous bases, including that its language is vague and undefined, and because formulating an answer is unduly burdensome given the myriad ways in which an individual can interact with the City following an impoundment. As if to make the City's point, Plaintiffs include no fewer than twelve additional questions about the impound process that they contend the City must answer. Dkt. 73 at 14.[10] Rule 26 allows courts to disallow discovery that can be obtained in a less burdensome manner, Fed. R. Civ. P. 26(b)(2)(C)(i), and the less burdensome approach would be for Plaintiffs to question a designated City witness on those procedures that are actually relevant to the case. See Strode v. Venice, IL, No. 06-228 GPM, 2007 WL 294263, at *7 (S.D. Ill. Jan. 30, 2007) (denying motion to compel and finding interrogatory better suited to a deposition when the "questions are simply too broad [and] there is no way to assess compliance").

**CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion to Compel should be denied in its entirety.

---

[10] Many of these questions are also plainly irrelevant to this case. For example, Plaintiffs insist that the City answer "how the City decides whether to sell, crush, or otherwise dispose of the car." Dkt. 73 at 14. There is no claim that relates to the particular manner of disposal of the vehicle. Plaintiffs also insist that the City report on "how it pursues unpaid debt as a result of an impound." Id. Again there is no claim that relates to how the City pursues debt, and further, it is outside the scope of the request anyhow.

Date: November 10, 2021

CELIA MEZA,
Corporation Counsel for the City of Chicago

By: /s/ _Peter H. Cavanaugh _
ANDREW W. WORSECK
PETER H. CAVANAUGH
City of Chicago, Department of Law
Constitutional and Commercial Litig. Div.
2 North LaSalle Street, Suite 520
Chicago, Illinois 60602
Andrew.Worseck@cityofchicago.org
Peter.Cavanaugh@cityofchicago.org
*Attorneys for Defendant City of Chicago*

# EX. A

*#281404*

I acknowledge that I was personally and/or my authorized agent was personally served with the Impound Notification for my vehicle today at the City of Chicago 400 W. Superior Payment Center

**Owner**

Name: *LewRaNce R GiAnt*
PRINT

Name: *Lewrence R. Gist*
Signature

Date: *4 / 1 / 19*

**Picture ID copy required to be attached**

**Authorized Agent**

Name: _____
PRINT

Name: _____
SIGNATURE

Date: _____

**Picture ID copy and notarized authorization required to be attached**

_____
Signature of Vehicle Impoundment Payment Center
Representative

# EX. B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JEROME DAVIS,<br>VERONICA WALKER-DAVIS,<br>SPENCER BYRD,<br>ALLIE NELSON, AND<br>LEWRANCE GANT<br><br>        Plaintiffs,<br><br>v.<br><br>CITY OF CHICAGO,<br><br>        Defendant. | No. 1:19-cv-03691<br><br>Assigned to the Honorable Judge Rowland<br><br>**Plaintiff Allie Nelson's Responses to the Defendant's First Interrogatories** |

Plaintiff Allie Nelson hereby responds to Defendant City of Chicago's First Interrogatories as follows.

### GENERAL OBJECTIONS

1.    Plaintiff has completed neither her investigation and discovery in this action nor her preparation for trial. Accordingly, all responses below are based only upon such information and documents that are presently available and specifically known to Plaintiff. All responses are provided without prejudice to Plaintiff's rights to:

        a.    Produce documents, evidence of any subsequently discovered fact or facts, or analyses not yet obtained or completed;

        b.    Otherwise assert factual and legal contentions as additional facts are ascertained, analyses are made, and legal research is completed; and

        c.    Amend, supplement, or withdraw any responses accordingly.

2.    Plaintiff makes no implied admissions below.

3.    Plaintiff objects generally to Defendant's First Interrogatories to the extent that they seek discovery of:

        a.    Information or documents subject to the attorney-client privilege, or any other applicable privilege;

        b.    Information or documents constituting the work product of Plaintiff or their attorneys in connection with the above-captioned matter;

c.      Information generated or documents prepared in anticipation of litigation or for trial by or for Plaintiff in connection with the above-captioned matter and not made discoverable by Rule 26;

d.      Information or documents not in the possession or control of Plaintiff;

e.      Confidential information or documents, except as a suitable protective order is entered.

f.      No response is intended to waive these objections, including the inadvertent disclosure of any privileged document that resulted from Plaintiff's good-faith effort to thoroughly respond to these interrogatories. Accordingly, Plaintiff reserves the right to recall any privileged document(s) from Defendant that were inadvertently disclosed in responding to these interrogatories.

4.      Plaintiff objects to the interrogatories to the extent that they are oppressive, overbroad, and unduly burdensome.

5.      Plaintiff objects to the interrogatories to the extent that they are vague, ambiguous, unintelligible, and make response impossible without speculation.

6.      Plaintiff objects to the interrogatories to the extent that they are beyond the scope of permissible discovery, seek information that is not relevant to the subject matter of this lawsuit, and/or are not reasonably calculated to lead to the discovery of admissible evidence.

7.      Plaintiff does not waive any of their general or specific objections in the event that she may furnish materials or information coming within the scope of any such objections.

8.      Plaintiff states that to the extent that any of the interrogatories seek information already produced or provided to Defendant, that information will not be reproduced unless Defendant specifically request it.

9.      Plaintiff objects to the interrogatories to the extent that they purport to impose a burden of disclosing information that is not readily available to Plaintiff or is equally available to Defendant. Plaintiff further objects to the interrogatories to the extent that they purport to impose a burden on Plaintiff to seek out information from third persons and/or to identify documents that are not in Plaintiff's possession, custody, or control, or that cannot be found in the course of a reasonable search.

10.      Where Defendant did not define a term used in the following interrogatories and are ambiguous, Plaintiff applies each term's common meaning.

11.      Plaintiff's answers to Defendant's First Interrogatories are subject to the General Objections as well as the specific objections made to each specific interrogatory. By answering certain interrogatories, Plaintiff does not waive these general objections or any specific objections to particular interrogatories.

**INTERROGATORY NO. 1:**

> **Identify by name (including all aliases), current address, and telephone number any and all persons having knowledge of the factual matters alleged in Plaintiffs' Amended Complaint, and briefly describe the subject matter of each person's knowledge.**

**Response:**

Objection. This interrogatory is unduly burdensome in that it seeks information about "any and all" persons with any knowledge of facts alleged in Plaintiffs' Amended Complaint. Numerous persons, including unknown third parties, are likely to have some knowledge of facts alleged in Plaintiffs' Amended Complaint. Further, Plaintiff has not completed investigation, discovery, or preparation for trial. Without waiving this or any other objection, Plaintiff responds with the following:

| Person | Subject Matter |
|---|---|
| Allie Nelson<br>10431 South State Street<br>Chicago, IL 60628<br>773.505.8318 | My car was seized and impounded by the City of Chicago for something that happened when it was being driven by someone else without my permission. I repeatedly tried to get it back, but never succeeded. |
| Jharad Tillis<br>7525 South Wentworth Avenue<br>Chicago, IL 60620 | Jharad was driving my car when it was seized. |
| Toni Wise<br>10431 South State Street<br>Chicago, IL 60628<br>773.703.9642 | Toni is my granddaughter. She was a passenger in the car when it was seized. |
| Earnest Moore<br>6609 South Maryland Avenue<br>Chicago, IL 60637<br>773.668.3201 | Earnest is my nephew. He drove me to City Hall and helped me try to get my car back. |

**INTERROGATORY NO. 2:**

> **Identify by name (including all aliases), current address, and telephone number any and all persons who may be called to testify at the trial in this matter, and identify the subjects of the witnesses' expected testimony.**

**Response:**

Objection. Plaintiff has not completed investigation, discovery, or preparation for trial. Without waiving this objection, Plaintiff responds at this time with the following:

| Person | Subject Matter |
|---|---|
| Allie Nelson<br>10431 South State Street | I can testify about my experience with the city's impound program after my car was seized and |

| Chicago, IL 60628 | impounded as a result of someone using the car |
| 773.505.8318 | without my permission. |

**INTERROGATORY NO. 3:**

> Describe all steps you took to locate and obtain release of your vehicle from impound following it being towed and impounded by the City of Chicago as described in the Amended Complaint, including the dates on which you took each action and identify all individuals you communicated with in your attempt to obtain release of your vehicle.

**Response:**

Objection. This interrogatory is unduly burdensome in that it seeks information about the names of every person Plaintiff communicated with and precise dates of events several years later. Without waiving this objection, Plaintiff responds with the following:

In October of 2017 I was in Texas recovering from chemotherapy treatments. On October 20, 2017, my granddaughter, Toni Wise, called me and told me that my car had been taken by Chicago police. She told me that the car had been taken when her then-boyfriend, Jharad Tillis, was driving it.

I called my nephew, Earnest Moore, and told him what happened and asked for his help. He started trying to find out why the car was taken and how to get it back. He called the impound lot and was told the car was under investigation by the police and they could not give him any information. Earnest called the police to find out about the investigation, but they also did not give any information.

A friend of Earnest's had told him about a hardship program that they thought allowed people to get their cars back when they are impounded. On November 2, 2017, Earnest and I went to the Daley Center to try to get the car back. I do not remember the names of everyone we spoke to at the Daley Center. While there, we had a hardship request that I wrote notarized by someone named Cecilia Griffin. While at the Daley Center, I also filed a motion to have my court fees waived, which was granted. In December 2017—I do not recall the exact date—I received a notice that a default judgment had been entered against me for $3,335.00 related to the seizure of my car. I had not received notice of the hearing that I had allegedly missed. On December 28, 2017, I went back to the Daley Center with my nephew Earnest to file a motion to set aside the default judgment. Someone in the Department of Administrative Hearings, I do not recall who, set a hearing date of January 2, 2018.

On January 2, 2018, Earnest took me to the hearing. My motion to set aside the default judgment was granted and a new hearing was scheduled for February 6, 2018.

Earnest again took me to the February 6 hearing. At that hearing, an administrative law officer determined that I was liable for $5,925.00—an amount which included a $2,000 penalty for unlawful drugs in a motor vehicle, $3,775 in storage fees, and $150.00 in towing fees.

4

At some point after the February 6 hearing (I believe it was in March 2018) I received a notice telling me that my car had been destroyed. I did not receive any notice prior to that letting me know that the City intended to destroy my car.

**INTERROGATORY NO. 4:**

> **Identify the date and time you first learned that your vehicle was impounded as described in the Amended Complaint, the means by which you learned of the impounding of your vehicle, and from whom you learned of the impounding of your vehicle.**

**Response:**

I learned my car was seized on October 20, 2017 when my granddaughter, Toni Wise, called me and told me. I learned it was at the impound lot after my nephew, Earnest Moore, called the impound lot to try to get information about the car and they told him it as involved in a police investigation.

**INTERROGATORY NO. 5:**

> **Identify each person answering or assisting in answering these interrogatories.**

**Response:**

Allie Nelson; Earnest Moore; Kirby Thomas West

**VERIFICATION**

I declare under penalty of perjury that the preceding interrogatory responses are true and correct to the best of my knowledge as of this date, December 16, 2020.
/s/ Allie Nelson

Dated: December 16, 2020

By: /s/ Diana K. Simpson
Diana K. Simpson
Kirby Thomas West
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, VA 22203
(703) 682-9320
diana.simpson@ij.org; kwest@ij.org

Robert Pavich
PAVICH LAW GROUP, PC
30 West Monroe Street, Suite 1310
Chicago, IL 60603
(312) 690-8400
rpavich@pavichlawgroup.com

5

# EX. C

*Counsel for Plaintiffs*

### CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2020, I emailed the foregoing *Plaintiff Allie Nelson's Responses to the Defendant's First Interrogatories* to the following counsel for Defendant:

Andrew W. Worseck
Peter H. Cavanaugh
City of Chicago, Department of Law
andrew.worseck@cityofchicago.org
peter.cavanaugh@cityofchicago.org

/s/ Diana K. Simpson

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JEROME DAVIS,<br>VERONICA WALKER-DAVIS,<br>SPENCER BYRD,<br>ALLIE NELSON, AND<br>LEWRANCE GANT | No. 1:19-cv-03691<br><br>Assigned to the Honorable Judge Rowland |
| Plaintiffs, | **Plaintiff Spencer Byrd's Responses to the Defendant's First Interrogatories** |
| v. | |
| CITY OF CHICAGO, | |
| Defendant. | |

Plaintiff Spencer Byrd hereby responds to Defendant City of Chicago's First Interrogatories as follows.

### GENERAL OBJECTIONS

1.      Plaintiff has completed neither his investigation and discovery in this action nor his preparation for trial. Accordingly, all responses below are based only upon such information and documents that are presently available and specifically known to Plaintiff. All responses are provided without prejudice to Plaintiff's rights to:

        a.      Produce documents, evidence of any subsequently discovered fact or facts, or analyses not yet obtained or completed;

        b.      Otherwise assert factual and legal contentions as additional facts are ascertained, analyses are made, and legal research is completed; and

        c.      Amend, supplement, or withdraw any responses accordingly.

2.      Plaintiff makes no implied admissions below.

3.      Plaintiff objects generally to Defendant's First Interrogatories to the extent that they seek discovery of:

        a.      Information or documents subject to the attorney-client privilege, or any other applicable privilege;

        b.      Information or documents constituting the work product of Plaintiff or their attorneys in connection with the above-captioned matter;

      c.      Information generated or documents prepared in anticipation of litigation or for trial by or for Plaintiff in connection with the above-captioned matter and not made discoverable by Rule 26;

      d.      Information or documents not in the possession or control of Plaintiff;

      e.      Confidential information or documents, except as a suitable protective order is entered.

      f.      No response is intended to waive these objections, including the inadvertent disclosure of any privileged document that resulted from Plaintiff's good-faith effort to thoroughly respond to these interrogatories. Accordingly, Plaintiff reserves the right to recall any privileged document(s) from Defendant that were inadvertently disclosed in responding to these interrogatories.

4.      Plaintiff objects to the interrogatories to the extent that they are oppressive, overbroad, and unduly burdensome.

5.      Plaintiff objects to the interrogatories to the extent that they are vague, ambiguous, unintelligible, and make response impossible without speculation.

6.      Plaintiff objects to the interrogatories to the extent that they are beyond the scope of permissible discovery, seek information that is not relevant to the subject matter of this lawsuit, and/or are not reasonably calculated to lead to the discovery of admissible evidence.

7.      Plaintiff does not waive any of their general or specific objections in the event that she may furnish materials or information coming within the scope of any such objections.

8.      Plaintiff states that to the extent that any of the interrogatories seek information already produced or provided to Defendant, that information will not be reproduced unless Defendant specifically request it.

9.      Plaintiff objects to the interrogatories to the extent that they purport to impose a burden of disclosing information that is not readily available to Plaintiff or is equally available to Defendant. Plaintiff further objects to the interrogatories to the extent that they purport to impose a burden on Plaintiff to seek out information from third persons and/or to identify documents that are not in Plaintiff's possession, custody, or control, or that cannot be found in the course of a reasonable search.

10.      Where Defendant did not define a term used in the following interrogatories and are ambiguous, Plaintiff applies each term's common meaning.

11.      Plaintiff's answers to Defendant's First Interrogatories are subject to the General Objections as well as the specific objections made to each specific interrogatory. By answering certain interrogatories, Plaintiff does not waive these general objections or any specific objections to particular interrogatories.

**INTERROGATORY NO. 1:**

      **Identify by name (including all aliases), current address, and telephone number any and all persons having knowledge of the factual matters alleged in Plaintiffs' Amended Complaint, and briefly describe the subject matter of each person's knowledge.**

**Response:**

      Objection. This interrogatory is unduly burdensome in that it seeks information about "any and all" persons with any knowledge of facts alleged in Plaintiffs' Amended Complaint. Numerous persons, including unknown third parties, are likely to have some knowledge of facts alleged in Plaintiffs' Amended Complaint. Further, Plaintiff has not completed investigation, discovery, or preparation for trial. Without waiving this or any other objection, Plaintiff responds with the following:

| Person | Subject Matter |
| --- | --- |
| Spencer Byrd<br>14529 Myrtle Avenue<br>Harvey, IL 60426<br>708.247.9454 | My car was impounded by the City of Chicago, and I have unsuccessfully tried to get it back from the police, the pound, and the courts. |
| Timothy Mars<br>1521 Woods<br>Harvey, IL 60426 | Timothy Mars was a passenger in my car when we were pulled over and my car was impounded. I do not know him. This information is from the documents I received relating to the impound. |
| Andrew Hemmer | Andrew Hemmer was an attorney from Cabrini Green who represented me in some of the legal proceedings related to my car. |

**INTERROGATORY NO. 2:**

      **Identify by name (including all aliases), current address, and telephone number any and all persons who may be called to testify at the trial in this matter, and identify the subjects of the witnesses' expected testimony.**

**Response:**

      Objection. Plaintiff has not completed investigation, discovery, or preparation for trial. Without waiving this objection, Plaintiff responds at this time with the following:

| Person | Subject Matter |
| --- | --- |
| Spencer Byrd<br>14529 Myrtle Avenue<br>Harvey, IL 60426<br>708.247.9454 | I can testify about my experience with the city's impound program after giving someone a ride whose car had broken down, we were pulled over, and my car was impounded. |

**INTERROGATORY NO. 3:**

> **Describe all steps you took to locate and obtain release of your vehicle from impound following it being towed and impounded by the City of Chicago as described in the Amended Complaint, including the dates on which you took each action and identify all individuals you communicated with in your attempt to obtain release of your vehicle.**

**Response:**

Objection. This interrogatory is unduly burdensome in that it seeks information about the names of every person Plaintiff communicated with and precise dates of events several years later. Without waiving this objection, Plaintiff responds with the following:

On the day that the police pulled me over, June 21, 2016, they took me and my passenger into the station. I asked at the station how to get my car back. They told me I had to go to court downtown to get it back. I don't remember the name of the police officers I spoke with.

I went downtown to the Daley Building the day after they towed my car. I went to the information center, where they told me that I should get a court date soon. I don't remember the dates or the names of the staff I spoke with.

I went to the Daley Building many times for the forfeiture case to try to get my car back. This took several months. The judge there waived my court fees and granted my hardship request motion to get my car and tools back so I could work. The judge said I could get them back if I paid a $30 bond, which I did. I then went to the pound on Doty Road to retrieve my tools and car, but they denied me and said I had to go to 400 West Superior to get an order to release my car. I don't remember the names of the people I spoke with.

I took the judge's order to 400 West Superior, but they would not release the car. I returned several times for hearings at 400 West Superior, but they kept refusing to release my car unless I paid all the fees. This happened for months. I don't remember the names of the people I spoke with.

I then got a court order dismissing the forfeiture case and saying that towing and storage fees would not be assessed. I had another hearing at 400 West Superior, and they said that I had to pay the fine and all the fees even though the state said I didn't have to pay any of it.

I tried to appeal, but that didn't work either.

A few months after my last hearing at 400 West Superior, I got a notice from the pound that they were going to dispose of my car. I called and ended up meeting the supervisor at the main police station headquarters near 35th and King. I think his name was Rick. He stopped my car from getting disposed of, but he couldn't give it to me.

In September or October 2020, I got a letter saying my car was being released from investigation and I could go get it. There was a number on the bottom of the letter that I called, and the person said I could go get it because that's what the computer said. I called the pound, but they told me I needed a release letter from 400 West Superior first. So I went to 400 West Superior, but

they couldn't find anything listed on the computer. I showed them my letter, but they said they wouldn't release it unless I could show them a hearing paper saying it was released or I paid for all the storage fees from 2016. They told me to speak with a city lawyer, and I did on the phone three days later, but she said I couldn't get the car without paying $2,000. I mentioned the release, and she said it didn't pertain to us, so I was back at square one and could only get the car if I paid the $2,000 fine. I don't remember the names of the people I spoke with.

**INTERROGATORY NO. 4:**

> **Describe all steps you took to locate and obtain release of your personal property inside of your vehicle from impound following your vehicle being towed and impounded by the City of Chicago as described in the Amended Complaint, including the dates on which you took each action, and identify all individuals you communicated with in your attempt to obtain release of your personal property.**

**Response:**

Objection. This interrogatory is unduly burdensome in that it seeks information about the names of every person Plaintiff communicated with and precise dates of events several years later. Without waiving this objection, Plaintiff responds with the following:

See my response to Interrogatory No. 3. In addition to what I said there, I called the pound to see if I could get the tools out separately. They told me the only way I could is if I signed a release of my car. I also visited in person to see if I could get the tools around January or February 2017, but they told me the same thing. I don't remember the names of the people I spoke with.

**INTERROGATORY NO. 5:**

> **Identify the date and time you first learned that your vehicle was impounded as described in the Amended Complaint, the means by which you learned of the impounding of your vehicle, and from whom you learned of the impounding of your vehicle.**

**Response:**

I found out my car was impounded the same day that the police took it—June 21, 2016, in the midafternoon, maybe around 2:00 to 4:00 pm. The police officers told me I couldn't take my car and they were impounding it.

**INTERROGATORY NO. 6:**

> **Identify each person answering or assisting in answering these interrogatories.**

Spencer Byrd, Diana Simpson.

**VERIFICATION**

I declare under penalty of perjury that the preceding interrogatory responses are true and correct to the best of my knowledge as of this date, December 16, 2020.

/s/ Spencer Byrd

Dated: December 16, 2020

By: /s/ Diana K. Simpson
   Diana K. Simpson
   Kirby Thomas West
   INSTITUTE FOR JUSTICE
   901 North Glebe Road, Suite 900
   Arlington, VA 22203
   (703) 682-9320
   diana.simpson@ij.org; kwest@ij.org

   Robert Pavich
   PAVICH LAW GROUP, PC
   30 West Monroe Street, Suite 1310
   Chicago, IL 60603
   (312) 690-8400
   rpavich@pavichlawgroup.com

   *Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

   I hereby certify that on December 16, 2020, I emailed the foregoing *Plaintiff Spencer Byrd's Responses to the Defendant's First Interrogatories* to the following counsel for Defendant:

  Andrew W. Worseck
  Peter H. Cavanaugh
  City of Chicago, Department of Law
  andrew.worseck@cityofchicago.org
  peter.cavanaugh@cityofchicago.org

   /s/ Diana K. Simpson

# EX. D

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| JEROME DAVIS,<br>VERONICA WALKER-DAVIS,<br>SPENCER BYRD,<br>ALLIE NELSON, AND<br>LEWRANCE GANT<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>CITY OF CHICAGO,<br><br>　　　　　　Defendant. | No. 1:19-cv-03691<br><br>Assigned to the Honorable Judge Rowland<br><br>**Plaintiff Lewrance Gant's Responses to the Defendant's First Interrogatories** |

Plaintiff Lewrance Gant hereby responds to Defendant City of Chicago's First Interrogatories as follows.

### GENERAL OBJECTIONS

1. Plaintiff has completed neither his investigation and discovery in this action nor his preparation for trial. Accordingly, all responses below are based only upon such information and documents that are presently available and specifically known to Plaintiff. All responses are provided without prejudice to Plaintiff's rights to:

   a. Produce documents, evidence of any subsequently discovered fact or facts, or analyses not yet obtained or completed;

   b. Otherwise assert factual and legal contentions as additional facts are ascertained, analyses are made, and legal research is completed; and

   c. Amend, supplement, or withdraw any responses accordingly.

2. Plaintiff makes no implied admissions below.

3. Plaintiff objects generally to Defendant's First Interrogatories to the extent that they seek discovery of:

   a. Information or documents subject to the attorney-client privilege, or any other applicable privilege;

   b. Information or documents constituting the work product of Plaintiff or their attorneys in connection with the above-captioned matter;

c.      Information generated or documents prepared in anticipation of litigation or for trial by or for Plaintiff in connection with the above-captioned matter and not made discoverable by Rule 26;

d.      Information or documents not in the possession or control of Plaintiff;

e.      Confidential information or documents, except as a suitable protective order is entered.

f.      No response is intended to waive these objections, including the inadvertent disclosure of any privileged document that resulted from Plaintiff's good-faith effort to thoroughly respond to these interrogatories. Accordingly, Plaintiff reserves the right to recall any privileged document(s) from Defendant that were inadvertently disclosed in responding to these interrogatories.

4.      Plaintiff objects to the interrogatories to the extent that they are oppressive, overbroad, and unduly burdensome.

5.      Plaintiff objects to the interrogatories to the extent that they are vague, ambiguous, unintelligible, and make response impossible without speculation.

6.      Plaintiff objects to the interrogatories to the extent that they are beyond the scope of permissible discovery, seek information that is not relevant to the subject matter of this lawsuit, and/or are not reasonably calculated to lead to the discovery of admissible evidence.

7.      Plaintiff does not waive any of their general or specific objections in the event that she may furnish materials or information coming within the scope of any such objections.

8.      Plaintiff states that to the extent that any of the interrogatories seek information already produced or provided to Defendant, that information will not be reproduced unless Defendant specifically request it.

9.      Plaintiff objects to the interrogatories to the extent that they purport to impose a burden of disclosing information that is not readily available to Plaintiff or is equally available to Defendant. Plaintiff further objects to the interrogatories to the extent that they purport to impose a burden on Plaintiff to seek out information from third persons and/or to identify documents that are not in Plaintiff's possession, custody, or control, or that cannot be found in the course of a reasonable search.

10.     Where Defendant did not define a term used in the following interrogatories and that is ambiguous, Plaintiff applies each term's common meaning.

11.     Plaintiff's answers to Defendant's First Interrogatories are subject to the General Objections as well as the specific objections made to each specific interrogatory. By answering certain interrogatories, Plaintiff does not waive these general objections or any specific objections to particular interrogatories.

**INTERROGATORY NO. 1:**

**Identify by name (including all aliases), current address, and telephone number any and all persons having knowledge of the factual matters alleged in Plaintiffs' Amended Complaint, and briefly describe the subject matter of each person's knowledge.**

**Response:**

Objection. This interrogatory is unduly burdensome in that it seeks information about "any and all" persons with any knowledge of facts alleged in Plaintiffs' Amended Complaint. Numerous persons, including unknown third parties, are likely to have some knowledge of facts alleged in Plaintiffs' Amended Complaint. Further, Plaintiff has not completed investigation, discovery, or preparation for trial. Without waiving this or any other objection, Plaintiff responds with the following:

| Person | Subject Matter |
|---|---|
| Lewrance Gant<br>7628 South Hermitage Avenue<br>Chicago, IL 60620<br>773.259.6210 | My car was impounded by the City of Chicago, and I unsuccessfully tried to get it back from the police, the pound, and by attending the hearings. |
| Donald Salter<br>1330 West 76th Street, Apartment 235<br>Chicago, IL 60620<br>312.450.9854 | I lent my car to Donald Salter, who was driving it when the police stopped him and then impounded the car. He also attended the hearings with me. |

**INTERROGATORY NO. 2:**

**Identify by name (including all aliases), current address, and telephone number any and all persons who may be called to testify at the trial in this matter, and identify the subjects of the witnesses' expected testimony.**

**Response:**

Objection. Plaintiff has not completed investigation, discovery, or preparation for trial. Without waiving this objection, Plaintiff responds at this time with the following:

| Person | Subject Matter |
|---|---|
| Lewrance Gant<br>7628 South Hermitage Avenue<br>Chicago, IL 60620<br>773.259.6210 | I can testify about my experience with the city's impound program after lending my car to my friend Donald Salter. |

**INTERROGATORY NO. 3:**

**Describe all steps you took to locate and obtain release of your vehicle from impound following it being towed and impounded by the City of Chicago as described in the Amended Complaint, including the dates on which you took each action and identify**

**all individuals you communicated with in your attempt to obtain release of your vehicle.**

**Response:**

Objection. This interrogatory is unduly burdensome in that it seeks information about the names of every person Plaintiff communicated with and precise dates of events more than a year later. Without waiving this objection, Plaintiff responds with the following:

I received a call from my friend Don Salter early in the morning on March 30, 2019, who was at the police station. Don told me he had been pulled over and that they were impounding the car. I went to the police station and asked if I could take my car, but they would not let me even though the car was sitting at the police station. The police told me I had to go to the pound to get the car out. I do not remember the names of the police officers I spoke with.

I went to the pound the next day in the morning with my friend Don. I talked with the staff there, but I don't remember their names. When I asked to get my car, they told me I needed to pay around $3,200 to get my car out. They also told me I had to go to court.

I went to the court at 400 West Superior the next day, Monday April 1, 2019. I talked with the staff there, but I don't remember their names. They told me the same thing that the people at the pound told me: I needed to pay around $3,200 to get my car out. I couldn't pay that, so I left. I returned three more times for hearings, but the court rescheduled some of them. Every time I went back, the fees at the pound kept increasing. The last hearing that I went to, I talked to the judge about what had happened and asked to get my car back, but the judge would not drop the charges, and that was the end of the case. I didn't remember all of the dates of the hearings, but I went back and looked at my documents and saw that the hearings were on April 1, 2019, April 30, 2019, June 4, 2019, and July 12, 2019. My friend Don went with me every time to court.

**INTERROGATORY NO. 4:**

**Identify the date and time you first learned that your vehicle was impounded as described in the Amended Complaint, the means by which you learned of the impounding of your vehicle, and from whom you learned of the impounding of your vehicle.**

**Response:**

I learned my car was going to be impounded on March 30, 2019, early in the morning, perhaps 8:00 or 9:00 am, when my friend Don Salter called me by phone and told me.

**INTERROGATORY NO. 5:**

**Identify each person answering or assisting in answering these interrogatories.**

**Response:**

Lewrance Gant, Diana Simpson.

VERIFICATION

I declare under penalty of perjury that the preceding interrogatory responses are true and correct to the best of my knowledge as of this date, December 16, 2020.

/s/ Lewrance Gant

Dated: December 16, 2020

By:    /s/ Diana K. Simpson

Diana K. Simpson
Kirby Thomas West
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, VA 22203
(703) 682-9320
diana.simpson@ij.org; kwest@ij.org

Robert Pavich
PAVICH LAW GROUP, PC
30 West Monroe Street, Suite 1310
Chicago, IL 60603
(312) 690-8400
rpavich@pavichlawgroup.com

*Counsel for Plaintiffs*

CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2020, I emailed the foregoing *Plaintiff Lewrance Gant's Responses to the Defendant's First Interrogatories* to the following counsel for Defendant:

Andrew W. Worseck
Peter H. Cavanaugh
City of Chicago, Department of Law
andrew.worseck@cityofchicago.org
peter.cavanaugh@cityofchicago.org

/s/ Diana K. Simpson

# EX. E

Case: 1:19-cv-03691 Document #: 77 Filed: 11/10/21 Page 41 of 41 PageID #:822

# CITY OF CHICAGO, DEPARTMENT OF ADMINISTRATIVE HEARINGS
## NOTICE OF HEARING



Docket # 19VP00412S

Vehicle Owner/Person Entitled to Possession: Lawrence R. Gant
Home Address:  7628 S HERMITAGE
City, State, and ZIP Code: Chicago, IL 60620
Vehicle License Plate Number:  BE16930

Vehicle Identification Number (V.I.N #): 2FABP7BV4AX100617          Date of Impoundment: March 30, 2019

---

**PLEASE BE ADVISED THAT PURSUANT TO  2-14-132, Municipal Code of Chicago, A HEARING TO CONTEST THE IMPOUNDMENT OF YOUR VEHICLE HAS BEEN SCHEDULED AT 400 W. Superior, Room 102 - Central Hearing Facility, Chicago, IL. On: Monday Apr 1, 2019 9:50 am**

Basis for impoundment of vehicle:   9-80-240  Vehicle operated by persons with suspended or revoked licenses.
                                    7-24-225   Unlawful drugs in motor vehicle.

If you fail to appear at the scheduled hearing, you shall be deemed to have waived your right to a hearing and a default finding of liability may be entered against you for the amount of administrative penalty, towing and accumulated storage fees.

If the vehicle remains impounded at the time of default, the default judgment shall include the amount of storage fees that accumulate each and every day that the vehicle remains impounded after the entry of the default judgment.  Any vehicle that is not reclaimed within ten (10) days after the expiration of the time to seek judicial review of a finding of liability or default finding of liability may be disposed of by the City.

CERTIFICATION OF SERVICE

I, _____ , certify that I served a copy of this Notice of Hearing, to the above named
(NAME OF EMPLOYEE)
individual,

___ A. by personally serving a copy of the same to the person on _____
                                                                        (DATE)

_____
SIGNATURE OF RESPONDENT (DESIGNEE)

___ B. at the above address by depositing the same in the United States Mail at _____
                                                                                    (LOCATION)

_____
EMPLOYEE'S SIGNATURE (SERVICE BY MAIL)

before 5:00 p.m. on _____
                          (DATE)

Questions about the hearing may be directed to the Department of Administrative Hearings.
312-742-8475

Printed: Apr 1, 2019 9:43 am

00093