**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

JEROME DAVIS,
VERONICA WALKER-DAVIS,
SPENCER BYRD,
ALLIE NELSON, AND
LEWRANCE GANT,

        Plaintiffs,

v.

CITY OF CHICAGO,

        Defendant.

No. 1:19-cv-03691

Assigned to the Honorable Judge Rowland

**Memorandum in Support of Plaintiffs' Motion for Class Certification**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................................ii

INTRODUCTION ....................................................................................................................1

STATEMENT OF FACTS .......................................................................................................2

LEGAL STANDARD ................................................................................................................5

ARGUMENT............................................................................................................................6

      I.      The Class's Membership is Ascertainable. ...................................................................7

      II.     The Class Satisfies the Four Requirements of Rule 23(a)..................................7

              A.     The proposed class of more than 50,000 vehicle owners satisfies numerosity. ...................................................................................................................8

              B.     The proposed class shares many common questions of law and fact capable of class-wide resolution..........................................................................9

                       1.     Count I: Proportionate Penalties Clause ...................................................9

                       2.     Counts III.B & IV.B: Due Process ........................................................10

              C.     Named Plaintiffs' claims are typical of the proposed class's claims. ...............11

              D.     Named Plaintiffs will adequately protect the interests of the proposed class. ...................................................................................................................12

      III.    This Case is Appropriate for Certification Under Rule 23(b)(2). ................................13

      IV.    Named Plaintiffs' Counsel Should be Appointed Class Counsel under Rule 23(g). ...14

CONCLUSION........................................................................................................................15

# TABLE OF AUTHORITIES

Page

**Cases**

*Allen v. Int'l Truck & Engine Corp.,*
358 F.3d 469 (7th Cir. 2004) .........................................................................................14

*Arreola v. Godinez,*
546 F.3d 788 (7th Cir. 2008) ...........................................................................................8

*Barnes v. Air Line Pilots Ass'n, Int'l,*
310 F.R.D. 551 (N.D. Ill. 2015) .......................................................................................8

*Beaton v. SpeedyPC Software,*
907 F.3d 1018 (7th Cir. 2018) .........................................................................................9

*Birchmeier v. Caribbean Cruise Line, Inc.,*
302 F.R.D. 240 (N.D. Ill. 2014) .......................................................................................7

*Brown v. Cook County,*
332 F.R.D. 229 (N.D. Ill. 2019) .......................................................................................7

*Cancel v. City of Chicago,*
254 F.R.D. 501 (N.D. Ill. 2008) ............................................................................... 11, 13

*Carlson v. Northrop Grumman Corp.,*
333 F.R.D. 415 (N.D. Ill. 2019) .....................................................................................14

*Chi. Tchrs. Union, Local No.1 v. Bd. of Educ.,*
797 F.3d 426 (7th Cir. 2015) ...........................................................................5, 6, 13, 14

*Cho v. City of New York,*
No. 16-CV-7961 (S.D.N.Y. Oct. 2, 2020) ......................................................................15

*Corsini v. City of New York,*
No. 20-cv-5459 (E.D.N.Y.) .............................................................................................15

*Heard v. Becton, Dickinson & Co.,*
524 F. Supp. 3d 831 (N.D. Ill. 2021) .............................................................................12

*Ingram v. County of Wayne,*
No. 20-cv-10288 (E.D. Mich.)........................................................................................15

*Johnson v. Meriter Health Servs. Emp. Ret. Plan,*
702 F.3d 364 (7th Cir. 2012) .........................................................................................14

*Katergaris v. City of New York*,
   No. 22-cv-7400 (S.D.N.Y.) ...................................................................................15

*Kolinek v. Walgreen Co.*,
   311 F.R.D. 483 (N.D. Ill. 2015) ..............................................................................5

*Lacy v. Cook County*,
   897 F.3d 847 (7th Cir. 2018) ......................................................................9, 11, 12

*Lacy v. Dart*,
   No. 14-CV-6259, 2015 WL 1995576 (N.D. Ill. Apr. 30, 2015),
   *aff'd in relevant part sub nom. Lacy v. Cook Cnty.*, 897 F.3d 847 (7th Cir. 2018) ....................12

*Messner v. Northshore Univ. HealthSystem*,
   669 F.3d 802 (7th Cir. 2012) ..................................................................................7

*Mullins v. Direct Digit., LLC*,
   795 F.3d 654 (7th Cir. 2015) .............................................................................5, 7

*Orr v. Shicker*,
   953 F.3d 490 (7th Cir. 2020) ..................................................................................8

*Pella Corp. v. Saltzman*,
   606 F.3d 391 (7th Cir. 2010) ................................................................................14

*People v. Miller*,
   781 N.E.2d 300 (Ill. 2002) ....................................................................................10

*Phillips v. Waukegan Hous. Auth.*,
   331 F.R.D. 341 (N.D. Ill. 2019) ..............................................................................8

*Root v. City of Sierra Vista*,
   No. cv-22-0210 (Ariz. Super. Ct.) ..........................................................................15

*Rush v. GreatBanc Tr. Co.*,
   No. 19-CV-00738, 2021 WL 2453070 (N.D. Ill. June 16, 2021) ..............................5

*Sepulveda v. City of Pasadena*,
   No. 2021-80180 (Tex. Dist. Ct.) .............................................................................15

*Snitko v. United States*,
   No. 21-CV-4405 (C.D. Cal. Oct. 12, 2021) ..........................................................15

*Sourovelis v. City of Philadelphia*,
   No. 14-CV-4687, 2021 WL 344598 (E.D. Pa. Jan. 28, 2021) ................................15

*Tenants Associated for a Better Spaulding (TABS) v. U.S. Dep't of Hous. & Urb. Dev. (HUD)*, 97 F.R.D.
   726 (N.D. Ill. 1983) ...............................................................................................8

*Walker v. Dart,*
 No. 20-CV-00261, 2021 WL 809765 (N.D. Ill. Mar. 3, 2021) ...................................... 7, 9, 10, 11, 12

*Whitner v. City of Pagedale,*
 No. 15-CV-1655 (E.D. Mo. May 21, 2018) ...................................................................15

**Codes & Regulations**

Chicago Mun. Code § 2-14-132 ................................................................................. 1, 6

**Rules**

Fed. R. Civ. P. 23(a)(1) ...............................................................................................8

Fed. R. Civ. P. 23(a)(3) .............................................................................................12

Fed. R. Civ. P. 23(a)(4) .............................................................................................12

Fed. R. Civ. P. 23(b)(2) .......................................................................................... 6, 13

Fed. R. Civ. P. 23(c)(1)(B) ...........................................................................................6

Fed. R. Civ. P. 23(c)(4) .............................................................................................15

Fed. R. Civ. P. 23(g)(1)(B) ..................................................................................... 6, 14

**Other Authorities**

Administrative Hearings, Hearing Locations, City of Chicago, https://www.chi-
 cago.gov/city/en/depts/ah/supp_info/hearing_location.html (last visited Dec. 12, 2022) ............3

Courts Directory, Cook County: Richard J. Daley Center, Illinois Courts, https://www.illi-
 noiscourts.gov/courts-directory/76/Cook-County-Richard-J-Daley-Center/court/ (last visited
 Dec. 12, 2022) ........................................................................................................3

Institute for Justice, About Us, https://ij.org/about-us/ (last visited Dec. 12, 2022) .........................15

# INTRODUCTION

Every year, Defendant City of Chicago (the City) seizes and impounds thousands of cars for a variety of offenses ranging from possession of drugs in a car to drag racing. Chicago Mun. Code § 2-14-132. The City imposes the penalties associated with impoundment, which typically range from $500 to $3,000, not against the person who committed the offense for which the vehicle was impounded, but against the vehicle's owner—regardless of whether she knew about the illegal activity or was present when it occurred. And once a car has been impounded, the bill quickly escalates. Car owners are on the hook for a $150 towing fee, as well as daily storage fees. *Id.* A car owner cannot secure release of her car until she pays the full amount of fees and the administrative penalty. In practice, this often means that car owners are never able to get their vehicles out of the pound.

In an effort to curb this abusive system, Named Plaintiffs Spencer Byrd, Allie Nelson, and Lewrance Gant (Named Plaintiffs) filed this action challenging as unconstitutional several aspects of the City's impoundment scheme. In the claims remaining before the Court, Named Plaintiffs allege that the City's impound program violates their constitutional rights by (1) assessing *in personam* penalties against vehicle owners without regard to their guilt or innocence in violation of the Proportionate Penalties Clause of the Illinois Constitution ("Count I"); (2) holding vehicles until owners provide full payment of fines and fees even though no final judgment has been entered in violation of the Due Process clauses of the Illinois and U.S. constitutions ("Counts III.B & IV.B"); and (3) failing to provide adequate notice of impoundment and disposal in violation of the Due Process clauses of the Illinois and U.S. constitutions ("Counts III.C & IV.C").

Named Plaintiffs are three of the tens of thousands of vehicle owners who have fallen victim to the City's unconstitutional impoundment practices. They brought this putative class action to vindicate their rights, the rights of the proposed class, and to ensure that others will not face unjust penalties or the loss of their cars. As shown below, Named Plaintiffs satisfy the requirements for class certification

under Rule 23(a) and Rule 23(b)(2), and counsel for Named Plaintiffs should be appointed as class counsel under Rule 23(g). Accordingly, Named Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Class Certification on Counts I, III.B, and IV.B, appoint Spencer Byrd, Allie Nelson, and Lewrance Gant as class representatives, and appoint the Institute for Justice and Pavich Law Group PC as class counsel.

## STATEMENT OF FACTS

On April 29, 2019, Named Plaintiffs filed this challenge to the City's vehicle impoundment program in the Circuit Court of Cook County, Illinois, which the City removed to this Court on June 3, 2019. ECF 1. On August 21, 2020, the Court granted in part and denied in part the City's motion to dismiss the case. ECF 54. The counts of the Amended Complaint, ECF 29, remaining after are: (1) Count I, which asserts that the City's assessment of fines without regard to guilt or innocence violates the Proportionate Penalties Clause of Article I, Section 11 of the Illinois Constitution; (2) Counts III.B and IV.B, which assert that the City's continued impoundment of vehicles without a final judgment violates the Due Process clauses of Article I, Section 2 of the Illinois Constitution and the Fourteenth Amendment to the U.S. Constitution; and (3) Counts III.C and IV.C, which assert that the City provides inadequate notice of vehicle impoundment and vehicle disposal, in violation of the Due Process clauses of Article I, Section 2 of the Illinois Constitution and the Fourteenth Amendment to the U.S. Constitution.[1] The Named Plaintiffs remaining after the Court's order on the motion to dismiss— Spencer Byrd, Allie Nelson, and Lewrance Gant—have all been subject to the challenged practices and are well suited to represent the class of vehicle owners proposed below.

### Plaintiff Spencer Byrd

On June 21, 2016, Chicago police pulled over Spencer Byrd for a broken turn signal. Decl. Spencer

---

[1] Because Counts III.C and IV.C require further discovery to establish numerosity, Plaintiffs do not move for certification on those claims at this time.

Byrd Supp. Pls.' Mot. Class Cert. ("Byrd Decl."), ¶¶ 4–6. At the time, Spencer, a mechanic, was giving a client a ride home while the client's car was out of commission. *Id.* Spencer kept his carpentry and mechanic tools, which he used to work, in the trunk of his car. *Id.* ¶ 3. Spencer's client (and passenger in the vehicle) apparently had drug paraphernalia on him. *Id.* ¶¶ 7–9. Officers took the men to the precinct house in handcuffs. *Id.* ¶ 9. After speaking with Spencer at the police station, they told him he was free to go but that his car was being impounded. *Id.* ¶ 10. As soon as he was released, Spencer started the process of trying to get his car back. *Id.* ¶ 11.

Spencer went to the Daley Center and 400 West Superior Street[2] multiple times to get his car released. *Id.* He finally got a hearing in November 2016 stemming from his financial hardship motion asking the court to release his car so that he could use his tools to work so that he could pay his bills. *Id.* A Cook County Circuit Court judge granted Spencer's motion and ordered the police to release the car, but it was of no use. *Id.* Even with the court order, the City refused to release the car unless Spencer paid more than $6,000—a sum that he could not afford. *Id.* Nevertheless, Spencer continued trying to get his car out of the impound lot; he returned multiple times to 400 West Superior for hearings, and he was ultimately found liable for the passenger's misconduct. *Id.* ¶¶ 12–13. Even today, more than six years later, Spencer still does not have his car or tools. *Id.* ¶¶ 14–16.

### Plaintiff Allie Nelson

In October 2017, Allie Nelson, a retired law enforcement officer, was in Texas recuperating from cancer treatments. Decl. Allie Nelson Supp. Pls.' Mot. Class Cert. ("Nelson Decl."), ¶¶ 2–4. While Allie was out of town—despite her express directions to the contrary (*id.* ¶¶ 3–4)—Allie's granddaughter, Toni Wise, allowed her then-boyfriend, Jharad Tillis, to drive Allie's car. *Id.* ¶ 5. On October 19,

---

[2] The Daley Center is home to the Circuit Court of Cook County. Courts Directory, Cook County: Richard J. Daley Center, Illinois Courts, https://www.illinoiscourts.gov/courts-directory/76/Cook-County-Richard-J-Daley-Center/court/ (last visited Dec. 12, 2022). 400 West Superior Street is the City's Department of Administrative Hearings Central Hearing Facility. Administrative Hearings, Hearing Locations, City of Chicago, https://www.chicago.gov/city/en/depts/ah/supp_info/hearing_location.html (last visited Dec. 12, 2022).

2017, police pulled over the car, claiming the windshield was cracked, with Mr. Tillis driving and Toni as a passenger. *Id.* Police searched the vehicle, impounded it, and arrested Mr. Tillis; they claimed to have found marijuana in a backpack in the car and a gun on Mr. Tillis. *Id.* They left Allie's granddaughter, Toni, standing alone on the street at night. *Id.* Allie, who was out of town during the incident, was unaware of Mr. Tillis ever possessing drugs or weapons. *Id.* ¶ 7.

After learning that her car had been impounded, Allie returned from Texas and tried to get it back. *Id.* ¶¶ 8–9. Like Spencer, Allie spent months navigating the administrative process trying to regain her car. *Id.* ¶¶ 10–13. And like Spencer, Allie's efforts were in vain. The City demanded over $4,000 to get her car back, which later increased, and she could not afford that amount. *Id.* ¶¶ 11–13. Criminal charges were ultimately dropped against Mr. Tillis, but the City still disposed of Allie's car. *Id.* ¶ 13. Nevertheless, the City continues to demand that she pay for the incident. *Id.* ¶ 15.

### Plaintiff Lewrance Gant

Lewrance Gant, an 82-year-old Chicago resident, lost his car to the City's impound system despite his innocence of any wrongdoing. On March 30, 2019, Lewrance lent his car to his longtime friend, Donald Salter, so that Mr. Salter could go to the laundromat. Decl. Lewrance Gant Supp. Pls.' Mot. Class Cert. ("Gant Decl."), ¶¶ 2, 5–8. While Mr. Salter was driving Lewrance's car, police pulled him over, claiming that he had failed to completely stop at an intersection. *Id.* ¶ 8. The police discovered that Mr. Salter's license had been suspended for unpaid tickets, and they claimed to see a plastic bag of marijuana in plain view in the backseat of the car. *Id.* As a result, they seized and impounded Lewrance's car. *Id.* ¶¶ 8, 11. Lewrance was unaware that Mr. Salter's license was suspended, and in the nearly thirty years that they had been friends, Lewrance had never known Mr. Salter to use or possess drugs or spend time with people who do. *Id.* ¶¶ 9–10.

Like Spencer and Allie, Lewrance unsuccessfully tried to navigate the process to get his car back. *Id.* ¶¶ 11–16. After several trips to 400 West Superior, however, Lewrance learned the same thing that

Spencer and Allie had learned: If you want your car back from the City, even if you haven't done anything wrong, you must be able to pay. *Id.* ¶¶ 13–15. Lewrance was ultimately told that he would have to pay $4,750 in fines and fees to get his car back. *Id.* ¶ 15. Lewrance could not afford the sum, so he was unable to retrieve his car, and the City disposed of it. *Id.* ¶¶ 15–16.

## LEGAL STANDARD

"The purpose of class action litigation is to avoid repeated litigation of the same issue and to facilitate prosecution of claims that any one individual might not otherwise bring on her own." *Chi. Tchrs. Union, Local No.1 v. Bd. of Educ.*, 797 F.3d 426, 433 (7th Cir. 2015); *see also Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 497 (N.D. Ill. 2015) ("[T]he class action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23." (citation omitted)). District courts have "broad discretion to determine whether to certify a class action" under Rule 23. *Rush v. GreatBanc Tr. Co.*, No. 19-CV-00738, 2021 WL 2453070, at *1 (N.D. Ill. June 16, 2021).

An implicit requirement under Rule 23 is that a class's membership must be "ascertainable" or defined clearly and by objective criteria. *Mullins v. Direct Digit., LLC*, 795 F.3d 654, 659 (7th Cir. 2015). Ascertainability concerns the "adequacy of the class definition itself" rather than the administrative burdens of identifying particular members of the class. *Id.* To be certified, a class must also meet the four requirements of Rule 23(a):

    (1)  the class is so numerous that joinder of all members is impracticable (numerosity);
    (2)  there are questions of law and fact common to the class (commonality);
    (3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and
    (4)  the representative parties will fairly and adequately protect the interests of the class (adequacy of representation).

*Chi. Tchrs. Union*, 797 F.3d at 433.

In addition, class actions must be one of three types identified in Rule 23(b). One type is identified in Rule 23(b)(2), where certification is appropriate where the "party opposing the class has acted . . .

on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Rule 23(b)(2) is satisfied where the contemplated equitable relief is "appropriate respecting the class as a whole" and "final."

A court certifying a class must also appoint class counsel. Fed. R. Civ. P. 23(c)(1)(B). In doing so, Rule 23(g)(1)(A) directs courts to consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. In appointing class counsel, courts may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

## ARGUMENT

What happened to Spencer, Allie, and Lewrance is all too common. By the City's account, it has impounded over 50,000 vehicles pursuant to Chicago Municipal Code Section 2-14-132(a) since May 2017. Decl. John G. Wrench Supp. Pls.' Mot. Class Cert. ("Wrench Decl."), Ex. 1 at 3. This Court should designate a class of individuals asserting the remaining claims in the Complaint, Counts I, III.B, and IV.B. This class should be defined as follows:

> **All people who own vehicles that Defendant City of Chicago impounded pursuant to Chicago Municipal Code Section 2-14-132 on or after May 1, 2017.**

The proposed class fulfills the requirements of Rule 23. First, the class's membership is ascertainable. Second, the class meets the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a). Third, the proposed class satisfies Rule 23(b) because the City "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Finally, Named Plaintiffs' counsel should be appointed as class counsel under Rule 23(g). Each prong is addressed in turn.

## I.     The Class's Membership is Ascertainable.

As a threshold matter, the proposed class definition satisfies the Seventh Circuit's implicit "ascertainability" requirement. *Mullins*, 795 F.3d at 659. A class definition satisfies that requirement when it "identif[ies] a particular group, harmed during a particular time frame, in a particular location, in a particular way." *Id.* at 660–61. "[A] court need not ascertain 'absent class members' actual identities" before certification—rather, "'[i]t is enough that the class be ascertain*able*,' with class members to be identified during a claims administration process if the class prevails." *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 245 (N.D. Ill. 2014) (citation omitted).

Named Plaintiffs' proposed class definition satisfies that requirement: "All people who own vehicles that Defendant City of Chicago impounded pursuant to Chicago Municipal Code Section 2-14-132 on or after May 1, 2017." That definition identifies a particular group of individuals (vehicle owners), harmed in a particular way (vehicles that have been or will be impounded by the City pursuant to Section 2-14-132), during a specific period (on or after May 1, 2017). *Mullins*, 795 F.3d at 660–61. The class definition is also based on two "objective, readily discernible" criteria: (1) whether an individual is the owner of a vehicle (2) that was impounded under Section 2-14-132. *See Brown v. Cook County*, 332 F.R.D. 229, 238 (N.D. Ill. 2019). Moreover, the City keeps records of vehicle impoundments and registered owners in the same document. *See, e.g.*, Wrench Decl., Ex. 2 at 10. This provides "an extremely clear and objective criteria for ascertaining the class." *Walker v. Dart*, No. 20-CV-00261, 2021 WL 809765, at *3 (N.D. Ill. Mar. 3, 2021) (citation omitted).

## II.     The Class Satisfies the Four Requirements of Rule 23(a).

"[A] proposed class must always meet the Rule 23(a) requirements of numerosity, typicality, commonality, and adequacy of representation." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). Plaintiffs may show that a proposed class satisfies the Rule 23 requirements by proving each requirement by a preponderance of evidence. *Id.* This proposed class meets each requirement.

*A.      The proposed class of more than 50,000 vehicle owners satisfies numerosity.*

Rule 23(a)(1) requires that a proposed class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement." *Orr v. Shicker*, 953 F.3d 490, 498 (7th Cir. 2020).

The proposed class here far eclipses the minimum number to establish numerosity. The City acknowledges that, between May 1, 2017, and November 30, 2020, it impounded 54,476 vehicles for offenses listed in Section 2-14-132(a). Wrench Decl., Ex. 1 at 3.[3] Indeed, the class is even larger because that number does not include vehicles impounded after November 30, 2020. Regardless of whether the rate of impoundment has increased, decreased, or stayed the same since November 30, 2020, the Court "may make [a] common sense assumption[ ]" that the proposed class likely includes thousands of additional class members. *Barnes v. Air Line Pilots Ass'n, Int'l*, 310 F.R.D. 551, 557 (N.D. Ill. 2015); *Arreola v. Godinez*, 546 F.3d 788, 798 (7th Cir. 2008) (finding numerosity where evidence "support[ed] a much larger estimate" than the 14 identified class members). Accordingly, the proposed class of at least 54,476 vehicle owners easily satisfies the numerosity requirement.

In addition to the sheer size of the proposed class, joinder is also impracticable here because many of the proposed class members "are likely to lack the means or resources to litigate their cases on their own." *Phillips v. Waukegan Hous. Auth.*, 331 F.R.D. 341, 351 (N.D. Ill. 2019); *see also Tenants Associated for a Better Spaulding (TABS) v. U.S. Dep't of Hous. & Urb. Dev. (HUD)*, 97 F.R.D. 726, 729 (N.D. Ill. 1983) (finding numerosity satisfied where "there is a very real possibility" that some class members

---

[3] Because all class members are subject to a system that imposes penalties without regard to guilt or innocence, the entire class may be certified for each claim. If the Court nevertheless finds it more appropriate to certify a subclass of vehicle owners who had no involvement in the offense leading to impoundment, a subclass for Count I is also sufficiently numerous to meet the requirements of Rule 23(a)(1). The City produced 2,000 vehicle impound seizure reports as a representative sample. *See* Wrench Decl., Ex. 3 at 1. In the first 100 reports of that sample alone, the driver at the time of impoundment was someone other than the vehicle's owner in 52 instances. *Id.* at 3–55.

would be "unable, financially or otherwise, to pursue their individual claims"). As Named Plaintiffs' experiences demonstrate, innocent owners often cannot afford to pay the rapidly accruing fines and fees necessary to retrieve their vehicles. Gant Decl. ¶¶ 13, 15–16; Nelson Decl. ¶¶ 11–12; Byrd Decl. ¶¶ 11–16. Indeed, between May 1, 2017, and November 30, 2020, the City disposed of 24,427 vehicles impounded pursuant to Section 2-14-132(a) when owners were unable to pay the accumulated fines and fees. Wrench Decl., Ex. 1 at 5.

B.     *The proposed class shares many common questions of law and fact capable of class-wide resolution.*

Rule 23(a)(2) requires "one or more common questions of law or fact that are capable of class-wide resolution and are central to the claims' validity." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018). "A single common question is sufficient." *Walker*, 2021 WL 809765, at *3. The "key to commonality" is "the capacity of the class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Lacy v. Cook County*, 897 F.3d 847, 865 (7th Cir. 2018) (cleaned up).

Here, there are a multitude of common questions stemming from the City's enforcement of its unconstitutional impound program, each of which are capable of class-wide resolution.

1.     *Count I: Proportionate Penalties Clause*

Count I asserts that the City's imposition of fines against vehicle owners without regard to their guilt or innocence violates the Proportionate Penalties Clause of the Illinois Constitution. Questions of fact common to the proposed class include:

1.   Does the City impound vehicles pursuant to Section 2-14-132 without regard to the owner's guilt or innocence?

2.   Does the City impose penalties on the owner of a vehicle impounded pursuant to Section 2-14-132 without regard to the owner's culpability?

3.   Does the City impose penalties on the owner of a vehicle impounded pursuant to Section 2-14-132 who has committed no offense?

Questions of law common to the proposed class include:

1.   Does the City's imposition of penalties on the owner of a vehicle impounded pursuant to

Section 2-14-132 without regard to the owner's culpability shock the moral sense of the community?

2. Does the City's imposition of penalties on the owner of a vehicle impounded pursuant to Section 2-14-132 without regard to the owner's culpability constitute a disproportionate penalty in violation of the Proportionate Penalties Clause of Article I, Section 11 of the Illinois Constitution?

These common questions all stem from the City's pattern of wrongdoing, and each independently satisfies the commonality requirement. *Walker*, 2021 WL 809765, at *3. The mandatory penalties set out in Section 2-14-132(a) are assessed against vehicle owners for various offenses committed with or in their vehicles. As Named Plaintiffs' experiences demonstrate, the City assesses those penalties against vehicle owners without any consideration of whether the owner is innocent of wrongdoing. That indiscriminate punishment—meted out without any regard for an owner's culpability—shocks the moral sense of the community, which violates Article I, Section 11 of the Illinois Constitution. *See, e.g., People v. Miller*, 781 N.E.2d 300, 308–09 (Ill. 2002) (emphasizing the importance of culpability in a Proportionate Penalties Clause analysis).

### 2. *Counts III.B & IV.B: Due Process*

Counts III.B & IV.B assert that the City's practice of holding vehicles until owners pay the full amount of fines and fees that might be owed even though no final judgment has been entered violates the due process guarantees of the Illinois and U.S. constitutions. Questions of fact common to the proposed class include:

1. Does the City demand payment of fines for vehicles impounded pursuant to Section 2-14-132 before final judgment relating to those fines has been entered?

2. Does the City refuse to release vehicles impounded pursuant to Section 2-14-132 until the owner pays all fees that have accumulated and all fines that might eventually be due once final judgment has been entered?

Questions of law common to the proposed class include:

1. Does the impoundment of vehicles prior to the entry of final judgment violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution?

2. Does the impoundment of vehicles prior to the entry of final judgment violate the due process guarantee of Article I of the Illinois Constitution?

3. Does the demand of payment in full of all fines that might be owed before the entry of final judgment as a condition to release a vehicle violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution?

4. Does the demand of payment in full of all fines that might be owed before the entry of final judgment as a condition to release a vehicle violate the due process guarantee of Article I of the Illinois Constitution?

These common questions all stem from the City's pattern of wrongdoing and each independently satisfies the commonality requirement. *Walker*, 2021 WL 809765, at *3. This Court has found commonality to exist among a proposed class under almost identical circumstances. In *Cancel v. City of Chicago*, this Court certified a class of vehicle owners challenging Chicago impoundments in circumstances similar to those here. 254 F.R.D. 501 (N.D. Ill. 2008). As here, the *Cancel* plaintiffs alleged violations of the Fourteenth Amendment's Due Process Clause—there, failure to provide reasonable notice and failure to provide prompt post-seizure probable cause hearings. *Id.* This Court found commonality "[b]ecause class members share at least one common question—whether they were afforded due process." *Id.* at 508. Like the class in *Cancel*, the proposed class here shares common questions relating to their due process claims. Each time that the City impounds a vehicle pursuant to Section 2-14-132, it follows the same procedure and insists that vehicle owners pay all fines and fees that might eventually be due, even before final judgment has been entered. All class members were subject to the same pattern of wrongdoing by the City that provides the basis for these due process claims.

\*      \*      \*

The common questions identified above are capable of class-wide resolution and will generate answers "apt to drive the resolution of the litigation." *Lacy*, 897 F.3d at 865. Accordingly, the proposed class satisfies Rule 23(a)(2).

### C.      *Named Plaintiffs' claims are typical of the proposed class's claims.*

The typicality requirement of Rule 23(a) is satisfied when "the claims or defenses of the

representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [is] based on the same legal theory." *Lacy*, 897 F.3d 847, 866 (cleaned up). "The requirements for commonality and typicality tend to merge." *Walker*, 2021 WL 809765, at *5 (quotation marks omitted).

Named Plaintiffs' claims are typical of the proposed class's claims. Each has been subject to the same unconstitutional conduct: the City's retention of cars absent final judgment and its imposition of fines without regard to their guilt or innocence of an underlying violation of Section 2-14-132(a). To remedy these injuries, Named Plaintiffs seek declaratory and injunctive relief that would compel the City to bring its impoundment system into compliance with the U.S. and Illinois constitutions. The proposed class has suffered the same injurious conduct and is entitled to the same relief.

> D.    *Named Plaintiffs will adequately protect the interests of the proposed class.*

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). A named plaintiff satisfies that requirement if they are "a member of the putative class and have the same interest and injury as other members." *Heard v. Becton, Dickinson & Co.*, 524 F. Supp. 3d 831, 851 (N.D. Ill. 2021) (citation omitted). The burden of demonstrating adequacy "is not heavy." *Lacy v. Dart*, No. 14-CV-6259, 2015 WL 1995576, at *5 (N.D. Ill. Apr. 30, 2015), *aff'd in relevant part sub nom. Lacy v. Cook County*, 897 F.3d 847 (7th Cir. 2018).

Named Plaintiffs will fairly and adequately protect the class interests. They were injured in the same ways and by the same conduct as the proposed class, and their interests in eliminating the City's unconstitutional practices are aligned. Over the last three-and-a-half years, Named Plaintiffs have vigorously advocated for that outcome, including opposing the City's motion to dismiss and pursuing discovery, including a motion to compel, that resulted in thousands of pages of documents and multiple depositions. Named Plaintiffs will pursue the class's interests with the same zeal.

## III. This Case is Appropriate for Certification Under Rule 23(b)(2).

The Court should certify the proposed class under Rule 23(b)(2) because the City has "acted . . . on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The Seventh Circuit has explained that certification under 23(b)(2) is appropriate when "the plaintiffs' primary goal is not monetary relief, but rather to require the defendant to do or not do something that would benefit the whole class." *Chi. Tchrs. Union*, 797 F.3d at 441. Accordingly, "[c]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples of Rule 23(b)(2) classes." *Id.* (cleaned up).

Named Plaintiffs' primary goal is final injunctive and declaratory relief that will benefit the proposed class as a whole. Specifically, Named Plaintiffs request that the Court permanently enjoin and declare unconstitutional: (1) The City's policy and practice of impounding the vehicles of, and imposing fines and fees on, owners without regard to their guilt or innocence; and (2) the City's policy and practice of requiring the owner of an impounded vehicle to pay an administrative penalty prior to any final judgment, plus fees that accrue only because the City refuses to release the car, in order to regain possession of their vehicle. ECF 29, Request for Relief ¶¶ D, E, H, I. Accordingly, Named Plaintiffs have proposed "a Rule 23(b)(2) class asking for the same injunction and declaratory relief for all." *Chi. Tchrs. Union*, 797 F.3d at 443; *see also Cancel*, 254 F.R.D. 501 (certifying Rule 23(b)(2) class challenging Chicago's failure to provide reasonable notice and prompt post-seizure probable cause hearings to owners of impounded vehicles).

Incidental to that injunctive relief, Plaintiffs also request: (1) an award of $1.00 in nominal damages for each claim; (2) the elimination of any outstanding fines or fees assessed pursuant to Section 2-14-132(a); (3) the return of any monies paid by vehicle owners to retrieve their vehicles impounded under Section 2-14-132(a); (4) the return of vehicles impounded for violations of Section 2-14-132(a) to their owners; and (5) for vehicles that the City impounded under Section 2-14-132(a) and disposed of,

restitution reflecting the value of such vehicles at the time of impoundment. ECF 29, Request for Relief ¶¶ L, M, O. In regard to the first four requests for relief, the City can accomplish each without any amount of individualized calculation. Similarly, for the fifth request, restitution amounts can be calculated based on a vehicle's make, model, and year. *See Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 370–72 (7th Cir. 2012) (certifying 23(b)(2) class that requested "incidental" monetary relief); *Allen v. Int'l Truck & Engine Corp.*, 358 F.3d 469, 471 (7th Cir. 2004) (finding certification under Rule 23(b)(2) appropriate despite need to individually calculate request for incidental damages). Accordingly, each of these requests is merely incidental to the requested declaratory and injunctive relief and, therefore, appropriate in a Rule 23(b)(2) class action.

Alternatively, if the Court deems that Named Plaintiffs' request for restitution is inappropriate for class-wide treatment, the Court should certify the Rule 23(b)(2) class as to liability alone and set aside restitution for later proceedings. *See Chi. Tchrs. Union*, 797 F.3d at 443 (holding that certification of a Rule 23(b)(2) class is appropriate even where "a determination of liability . . . might require later determinations of individual relief"); *Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010) ("A district court has the discretion to split a case by certifying . . . a class for liability alone where damages or causation may require individualized assessments.").

## IV.     Named Plaintiffs' Counsel Should be Appointed Class Counsel under Rule 23(g).

Finally, the Court should appoint Named Plaintiffs' counsel as class counsel. "Under Rule 23(g)," which "guides courts' evaluation of proposed class counsel," courts are to consider:

(i)   the work counsel has done in identifying or investigating potential claims in the action;
(ii)  counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
(iii) counsel's knowledge of the applicable law; and
(iv)  the resources that counsel will commit to representing the class.

*Carlson v. Northrop Grumman Corp.*, 333 F.R.D. 415, 424 (N.D. Ill. 2019). Courts may also consider any other matter pertinent to counsel's ability to represent the class's interests. Fed. R. Civ. P. 23(g)(1)(B).

Named Plaintiffs are represented *pro bono* by the Institute for Justice—a nonprofit, public-interest law firm that litigates constitutional issues across the country—and the Pavich Law Group. *See* Institute for Justice, About Us, https://ij.org/about-us/ (last visited Dec. 12, 2022). The Institute for Justice has litigated several class actions or putative class actions in federal court, including against Philadelphia; New York City; Pagedale, Missouri; and the federal government.[4] Furthermore, the Institute for Justice attorneys listed below have served as counsel in cases involving the constitutional issues present here, disproportionate penalties and due process.[5]

In this case, counsel for Named Plaintiffs have investigated and litigated Named Plaintiffs' claims for over three years. Specifically, counsel listed below investigated the facts surrounding Named Plaintiffs' claims, filed the Complaint and First Amended Complaint, opposed the City's motion to dismiss, and conducted discovery—including reviewing thousands of pages of documents, arguing a motion to compel, defending the City's depositions of Named Plaintiffs, and deposing the City's witnesses. Counsel for Named Plaintiffs will continue to devote the resources necessary to vigorously litigate this class action. Accordingly, the Court should appoint counsel for Named Plaintiffs as class counsel.

## CONCLUSION

The Court should grant Plaintiffs' motion; certify the proposed class; appoint Spencer Byrd, Allie Nelson, and Lewrance Gant as class representatives; and appoint Plaintiffs' counsel as class counsel.

If the Court deems that restitution is not appropriate for class-wide treatment, Plaintiffs alternatively request that the Court certify the class as to liability only. *See* Fed. R. Civ. P. 23(c)(4).

Dated: December 12, 2022                    Respectfully submitted,

                                            /s/ Diana K. Simpson

---

[4] *Sourovelis v. City of Philadelphia*, No. 14-CV-4687, 2021 WL 344598, at *1 (E.D. Pa. Jan. 28, 2021); *Cho v. City of New York*, No. 16-CV-7961 (S.D.N.Y. Oct. 2, 2020); *Whitner v. City of Pagedale*, No. 15-CV-1655 (E.D. Mo. May 21, 2018); *Snitko v. United States*, No. 21-CV-4405 (C.D. Cal. Oct. 12, 2021).

[5] *See, e.g.*, *Katergaris v. City of New York*, No. 22-cv-7400 (S.D.N.Y.); *Corsini v. City of New York*, No. 20-cv-5459 (E.D.N.Y.); *Ingram v. County of Wayne*, No. 20-cv-10288 (E.D. Mich.); *Root v. City of Sierra Vista*, No. cv-22-0210 (Ariz. Super. Ct.); *Sepulveda v. City of Pasadena*, No. 2021-80180 (Tex. Dist. Ct.).

Robert Pavich
PAVICH LAW GROUP, PC
30 West Monroe Street
Suite 1310
Chicago, IL 60603
(312) 690-8400
rpavich@pavichlawgroup.com

Diana K. Simpson
Kirby Thomas West
John G. Wrench
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, VA 22203
(703) 682-9320
diana.simpson@ij.org; kwest@ij.org;
jwrench@ij.org

*Counsel for Plaintiffs*