# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JEROME DAVIS, VERONICA WALKER-DAVIS, SPENCER BYRD, ALLIE NELSON, AND LEWRANCE GANT,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF CHICAGO,<br><br>Defendant. | No. 1:19-cv-03691<br><br>Assigned to the Honorable Judge Rowland<br><br>**Declaration of Spencer Byrd in Support of Plaintiffs' Motion for Class Certification** |

I, Spencer Byrd, do affirm and state as follows:

1. I am an adult resident of Illinois, and I make this declaration based on my personal knowledge of the facts stated below. If called upon, I could testify competently to these facts.

2. I am a resident of Chicago.

3. Between 2004 and 2016, I was employed as an apprentice and journeyman carpenter. I was also a member of the carpenter's union. In 2016, I owned about $4,500 worth of carpentry tools. My father also trained me as a mechanic, so I worked on people's cars in my spare time. In 2016, I owned about $5,000 worth of mechanic tools. I kept both my carpentry and mechanic tools in the trunk of my car.

4. On June 21, 2016, I got a call from an unknown number. The caller was Timothy Mars, who I was familiar with from grammar school but did not know as a friend. Mr. Mars told me that his car had broken down and asked if I would come try to fix it. I had never worked on any vehicles for Mr. Mars before.

5. I drove to where Mr. Mars's car was broken down but was unable to repair it. He asked if I would give him a ride somewhere, and I agreed because his car was broken down.

6. While driving Mr. Mars to the address he gave me, an officer stopped the car because he said that my turn signal wasn't working. I showed the officer that I was operating the turn signal manually. I had discovered a problem with the signal two days before, which I planned on fixing but had not yet had a chance to do so.

7. While I was standing outside of my car talking to the officer, a second officer was talking to Mr. Mars on the other side of my car. I could not hear what the second officer and Mr. Mars were talking about. The officers next told me that I was being arrested because the officers found drug paraphernalia in my passenger's pocket.

8. When I agreed to give Mr. Mars a ride in my car, I was unaware that he had any drugs with him. I did not know Mr. Mars to be involved with drugs.

9. The officers told me that they were taking my car and then brought Mr. Mars and I to the precinct house in handcuffs.

10. At the police station, they put me in a holding room, where a police officer asked me some questions. About two hours later, the officers told me that I was free to go but that my car was being impounded. My carpentry and mechanic tools were in the trunk of my car when it was impounded.

11. Once they released me, I started the process of trying to get my car back. I went to the Daley Center and to 400 West Superior several times. In November 2016, I finally got a hearing on my request that the court release my car because of financial hardship. I explained that I was unable to pay bills without my car and tools. The court granted my hardship request and ordered the police to release my car and tools. But the City would not release my car or my tools unless I paid $6,305. I could not afford to pay that, so the City would not release my car.

12. I went back to 400 West Superior for more hearings. On some of the dates, the court rescheduled hearings for later days. Each time I went, the amount I had to pay to get my car back was higher than before.

13. I had a hearing at 400 West Superior on February 24, 2017, where I was able to testify. I told the court that I had given Mr. Mars a ride on June 21, 2016, because he was having car trouble. I also told the court that I did not know that Mr. Mars had any drugs on him when I gave him a ride in my car. The court still found me liable and said that I owed $8,790, which I could not afford.

14. In September of 2017, I received another letter from the City saying that I owed $17,790. It was my understanding that I could not get my car or tools back unless I paid that amount.

15. In the fall of 2020, I received a letter saying that I could get my car. I tried to get my car out, but the City told me that they would only release it if I paid $2,000. But I could not afford that, so I could not get my car out of the impound lot.

16. Since June 21, 2016, I have been unable to pay any of the fines or fees required to get my car back. I still do not have my car, or my carpentry or mechanic tools.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this ___1___ day of December, 2022.

Spencer Byrd