IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEROME DAVIS, *et al.*, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | No. 19-CV-3691 |
| ) | Honorable Lindsay C. Jenkins |
| ) | |
| CITY OF CHICAGO, ) | |
| ) | |
| **Defendant.** ) | |

**DEFENDANT'S SUR-REPLY IN OPPOSITION TO PLAINTIFFS' MOTION
TO CERTIFY A CLASS PURSUANT TO RULE 23(B)(2)**

Plaintiffs seek to certify a class pursuant to Federal Rule of Civil Procedure 23(b)(2) with respect to two claims: (1) a claim that the City violates the Proportional Penalties Clause of the Illinois constitution by imposing fines and fees against "innocent" vehicle owners and (2) a claim that the City violates due process by holding impounded vehicles before a final judgment is entered at the Department of Administrative Hearings ("DOAH"). The proposed class, comprised of all owners whose vehicles were impounded pursuant to Municipal Code of Chicago ("MCC") Section 2-14-132 on or after May 1, 2017, would seek prospective injunctions against the City's purported practice of imposing fines and fees "without regard to [owners'] guilt or innocence" and the City's practice of holding impounded vehicles pending judgment at DOAH. *See* Dkt. 114 at 13. The City opposes class certification on several grounds, including that Plaintiffs have failed to establish that either the named Plaintiffs or the class as a whole have standing to pursue prospective relief. *See* Dkt. 129. As the City explained, standing is lacking because Plaintiffs have not shown that there is a real and immediate threat that, in the future,

fines would be imposed on them as "innocent" owners or that their vehicles would be impounded and held prior to a final judgment.

In their reply, Plaintiffs attempt to salvage their standing by arguing that "the challenged policies pose a real and ongoing threat to all vehicle owners in the City," but cite only a single piece of evidentiary support for that sweeping assertion: Plaintiff Lewrance Gant's receipt of a Gone on Arrival ("GOA") notice in early 2023 stating that his Chrysler sedan is subject to potential impoundment. *See* Dkt. 131 at 17. As discussed herein, this lone GOA notice cannot sustain Plaintiffs' substantial burden of establishing that thousands of members of the proposed class have standing to pursue injunctive relief against the City's impoundment practices. Indeed, issuance of the notice was not reflective of a common, class wide practice that results in fines against innocent owners or holding impounded vehicles prior to final judgment. Rather, it resulted from a mere paperwork error by a police officer, and, even more, did not require Plaintiff Gant to pay any fines or result in impoundment of Plaintiff Gant's vehicle. Accordingly, issuance of the GOA notice is not exemplary of the specific harms underlying Plaintiffs' claims and does not establish that those purported harms are likely to recur for Plaintiff Gant or the class members. For this reason, and several others identified herein and in the City's opposition to class certification, the City respectfully requests that Plaintiffs' motion be denied.

## BACKGROUND

Pursuant to the Court's order on May 19, 2023 (Dkt. 140), the parties conducted discovery with respect to the GOA notice issued to Plaintiff Gant. Discovery included production of documents and videos, issuance of certified interrogatory responses (Exhibit A), and a deposition of CPD Officer Daniel Calzada, who served as the City's Rule 30(b)(6) representative (transcript at Exhibit B). The facts revealed by discovery are clear: the GOA notice was issued

based on erroneous vehicle information entered into a CPD vehicle impoundment form. In addition, the error was uncovered while administrative proceedings at DOAH were pending against Plaintiff Gant, and the case was non-suited. Plaintiff Gant was therefore never held liable for any fines or fees relating to the GOA notice, nor was his vehicle ever impounded.

The vehicle impoundment form (Ex. C) upon which the GOA notice was based was completed by CPD Officer Calzada following a traffic stop of an individual named Thomas Porter on January 19, 2023. The traffic stop was a "high stress" situation (Ex. C at 34:21-35:4), for a handgun with an unlawful high-capacity magazine and laser sight was recovered from the driver's seat of the vehicle, Porter Arrest Report at 3, attached as Exhibit D, rendering it impoundable pursuant to MCC Section 2-14-132(a)(1). Porter's vehicle appeared to be a Dodge Avenger (rather than Mr. Gant's Chrysler 300), and Officer Calzada erroneously entered Plaintiff Gant's vehicle information into an impoundment form after transporting Mr. Porter to a CPD station. Ex. C at 18:5–14; 33:16-34:20. Officer Calzada did not have a specific memory of how this error occurred but testified that he believed he relied on the wrong license plate number when completing the report.[1] *Id.* at 33:19–34:2.

Following Officer Calzada's completion of the impoundment report, a tow truck driver was dispatched to the scene of the Porter traffic stop, but certified that Mr. Gant's Chrysler was not present to be towed. Ex. D. Subsequently, the Department of Streets and Sanitation issued the GOA notice to Plaintiff Gant based on the contents of the impoundment report and the tow truck driver's certification, and Plaintiff Gant later challenged the notice at DOAH.

---

[1] For reference, CPD officers can access vehicle registration information by entering license plate numbers into a system called the Law Enforcement Automated Data System ("LEADS"). See Ex. C at 38:19–25; Answer to Interrogatory 24. Officers are able to run LEADS inquiries from computers (or portable data terminals) in their patrol vehicles, such as during traffic stops; computers are also available in the station lockup where officers complete reports. Ex. C. at 9:21–10:12; 59:17–60:2.

3

At an initial hearing, the case was continued to permit time for Plaintiff Gant to prepare a defense. Ex. E. He was permitted to raise a number of defenses at the DOAH proceedings, including an innocent owner defense that has been expressly codified at MCC § 2-14-132(h)(5)(i). City attorneys also investigated the matter and promptly non-suited the DOAH action after body camera footage from the Porter stop revealed that the information for Gant's vehicle in the GOA notice did not match the vehicle shown on the video. Ex. A, Answer to Interrogatory 23. Mr. Gant's Chrysler was never towed or impounded in connection with the GOA notice and, because Mr. Gant prevailed in the proceedings at DOAH, he was not required to pay any fines or fees. Plaintiffs have not submitted evidence that Plaintiffs Gant, Nelson, Byrd—or any members of the proposed class—have experienced any vehicle impoundments other than those that they challenge in this suit. And, indeed, Plaintiffs Gant, Nelson, and Byrd each previously testified that they now take greater care in loaning their vehicles to third parties or permitting passengers into their vehicles. *See* Dkt. 129 at 11.

## ARGUMENT

### A. Issuance of a GOA notice to Plaintiff Gant does not establish that Plaintiff Gant or the class as a whole have standing to seek prospective relief.

As the City explained in its opposition, a party seeking a prospective injunction cannot establish standing by merely alleging that she was subject to unlawful conduct in the past. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). Rather, she must show that she is "likely to suffer [a] future injury" of the type underlying her claim. *Id*. In doing so, she must do more than allege a "conjectural or hypothetical" risk; instead, she must show that she is under "threat of suffering 'injury in fact' that is concrete and particularized" and that "threat must be actual and imminent." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (citation omitted).

4

In its opposition, the City demonstrated that Plaintiffs have failed to sustain this burden. Opp. 9–11. Indeed, there is nothing in the record showing that Plaintiffs or the proposed class are under an actual and imminent threat of being fined for the actions of another or having their vehicles impounded. In reply, Plaintiffs do not even attempt to cite to the discovery record to establish the elements of standing. Reply at 15–17. This is fatal, because Plaintiffs bear the burden to adduce evidence establishing an "actual and imminent" threat of a "concrete and particularized" injury. *Summers*, 555 U.S. at 493. As made clear by *Lyons* and its progeny, Plaintiffs may not rely on generalized allegations that the City's impoundment system is "abuse-prone" (Dkt. 147 at 2), nor may Plaintiffs argue that class members may have *some* future interaction with the City's impoundment system. *See, e.g., Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1075 (7th Cir. 2013) (a plaintiff seeking an injunction against ADA violations must establish that she intends to visit the "particular place (or places)" where the violations are occurring). Instead, Plaintiffs must demonstrate that class members are likely to suffer the particularized harms underlying the class claims, namely: (1) imposition of fines and fees notwithstanding so-called "innocent owner" status and (2) impoundment of vehicles pending entry of a final judgment DOAH. As discussed below, Plaintiff Gant's receipt of a GOA notice in connection with the January 19 arrest of Thomas Porter does not evidence a "concrete and particularized" future risk of these injuries for Plaintiff Gant or for the class as a whole.

With respect to Plaintiffs' claim under the Proportionate Penalties Clause, the GOA notice and subsequent administrative proceedings did not result in the imposition of fines and fees against an innocent owner. Nor were they likely to have done so, because Plaintiff Gant was free to raise an innocent owner defense during DOAH proceedings. Following a 2020 amendment to the impoundment ordinance, vehicle owners are now expressly authorized to raise

that defense at DOAH. *See* MCC § 2-14-132(h)(5)(i). Additionally, this situation did not involve an "innocent owner" as conceived by Plaintiffs – namely an owner who is unaware that her vehicle was used by a third party during the commission of a criminal offense. Plaintiff Gant's vehicle simply was not involved at all in the January 19 traffic stop that led to issuance of the GOA notice. Finally, because Plaintiff Gant prevailed in the administrative proceedings, he was not required to pay any fines or fees, and his vehicle is no longer at risk of being impounded. In sum, Plaintiff Gant's receipt of a GOA notice does not establish a "concrete and particularized" risk that fines will be imposed on Plaintiff Gant or other purportedly innocent owners. If anything, it evidences the opposite: the DOAH process works to vindicate the rights of owners whose vehicles were not properly subject to impoundment under the Municipal Code.

With respect to Plaintiff's due process claim, Plaintiff Gant's receipt of a GOA notice does not establish a "concrete and particularized" risk that Plaintiff Gant's vehicle, or other class members' vehicles, will be impounded and held pending final judgment at DOAH. Importantly, it is undisputed that Plaintiff Gant's vehicle was never towed or impounded in connection with the GOA notice. The City did not, for instance, dispatch a tow truck to Plaintiff Gant's address to tow his Chrysler; instead, the City mailed GOA notices to Plaintiff Gant, which he then challenged at DOAH. Additionally, Plaintiffs Gant, Nelson, and Byrd testified that they take heightened care in loaning their vehicles or permitting passengers into their vehicles, which makes it even more unlikely that any of their vehicles will be towed and impounded in the future based on the actions of others. Plaintiff Gant's receipt of a GOA notice simply does not support the contention that Plaintiffs Gant, Nelson, and Byrd—much less tens of thousands of class members—are likely to have vehicles towed and impounded again in the future pursuant to MCC § 2-14-132.

6

Plaintiffs are not helped by *Barrios v. City of Chicago*, No. 15-CV-2648, 2016 WL 164414 (N.D. Ill. Jan. 14, 2016) or *Smith v. City of Chicago*, 143 F. Supp. 3d 741 (N.D. Ill. 2015). For one, these cases are no substitute for actual record evidence in this case supporting standing. *See supra* at 5; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (holding that once a case has proceeded beyond the discovery stage, it is a plaintiff's burden to adduce evidence supporting "specific facts" that establish the elements of standing). In each of Plaintiffs' cases, moreover, there were specific factual allegations indicating that the plaintiffs were under a real and imminent threat of future injury. In *Barrios*, for instance, a plaintiff submitted an affidavit attesting that he had again been subjected to the precise injury underlying his claims. 2016 WL 164414 at *8. Likewise, in *Smith*, the plaintiffs alleged not only the existence of an ongoing policy but that they had repeatedly been subjected to the policy. 143 F. Supp. 3d at 752. These specific allegations are a far cry from this matter, where the only fact relied on by Plaintiffs to establish an ongoing risk of injury for the entire class is Plaintiff Gant's receipt of a GOA notice.

Finally, it bears emphasizing that Plaintiffs rely on the GOA notice not only to establish Plaintiff Gant's standing but the standing of all tens of thousands of members of the proposed class. *See* Reply at 17–18 (suggesting that Plaintiffs need not submit any additional evidence). But as Plaintiffs' own authority establishes, relying on a specific incident involving Plaintiff Gant to establish that all of the named Plaintiffs and class members "will be subjected to the City's alleged policy again" is impermissibly speculative. *Barrios*, 2016 WL 164414, at *9 n. 7. Additionally, Plaintiffs fail to respond to authority cited by the City denying (b)(2) certification due to concerns regarding class members' standing. *See* Opp. at 12. For all these reasons, Plaintiffs fail to establish the class members' standing.

### B. Plaintiffs' reply confirms that their class certification should be denied for several independent reasons.

Even if Plaintiffs and class members had standing to pursue prospective injunctive relief, certification still should be denied for several independent reasons, none of which are undercut by the recent discovery or Plaintiffs' reply.

**First**, Plaintiffs have failed to meet their burden to establish that the injunctive relief they seek is appropriate to the class as a whole, including because the class includes substantial numbers of individuals to whom the City is not liable even under Plaintiffs' theories.

Notably, as to their Proportionate Penalties claim, Plaintiffs' reply appears to concede that the claim is moot because vehicle owners are now expressly able to raise an innocent owner defense at DOAH (*see* MCC § 2-14-132(h)(5)(i)), and so Rule 23(b)(2) certification is not appropriate with respect to the class as a whole on that claim. *See* Opp. at Section D. In response, Plaintiffs argue that the Court could modify the class definition to include only individuals whose vehicles were impounded prior to 2020. Reply at 19-20. But this modification would not cure the mootness of the prospective relief sought with respect to the Proportionate Penalties claim because, even for those owners whose vehicles were impounded before 2020, they could raise an innocent owner defense should their vehicles be impounded in the future. Additionally, as the City explained, precisely because pre-2020 class members very likely have already had their vehicles impounded and disposed of, their relief would consist almost exclusively of money damages, which precludes Rule 23(b)(2) certification under *Kartman v. State Farm Mutual Auto. Insurance Company*, 634 F.3d 883, 892 (7th Cir. 2011) and other authority the City cited (*see* opp. at 14-15), and which Plaintiffs entirely ignore.

The relief Plaintiffs seek with respect to the Proportionate Penalties claim also fails because liability would turn on individualized determinations of each class members' culpability.

Opp. at 13–14. In reply, Plaintiffs attempt to wave this argument away by repeatedly characterizing their claims as "facial" challenges to the ordinance as a whole. However, this reflexive characterization does not meaningfully rebut the City's argument that a Proportionate Penalties claim – which focuses on whether a penalty is "so wholly disproportionate to the *offense committed* as to shock the moral sense of the community" – necessarily entails consideration of the nature of an offense and an offender's culpability. *People v. Sharpe*, 216 Ill. 2d 481, 487 (2005) (citation omitted and emphasis added); *see also People v. Miller*, 202 Ill. 2d 328, 341 (2002) (considering culpability in analyzing a PPC claim); Opp. at 22–23.

As to Plaintiffs' due process claim, Plaintiffs' argument for class-wide injunctive relief is likewise based on their erroneous characterization of the claim as involving a facial challenge. Contrary to Plaintiffs' characterization, this Court expressly found that Plaintiffs' due process claim is an as-applied challenge. Dkt. 54 at 19 n. 6. Further, to the extent that this claim is analyzed under the fact specific *Mathews* factors, that analysis cannot (contrary to Plaintiffs' argument) be conducted in one fell swoop for tens of thousands of class members; "procedural due process requirements applicable to a particular situation are highly fact-specific and therefore depend on the particular situation." *Fenje v. Feld*, 301 F. Supp. 2d 781, 799–800 (N.D. Ill. 2003), aff'd, 398 F.3d 620 (7th Cir. 2005). *See also* Opp. at 24–26. Thus, Plaintiffs have failed to meet their burden for Rule 23(b)(2) certification.

**Second**, Plaintiffs fail to show that their request for monetary damages is permissible for a Rule 23(b)(2) class. As the City explained, Plaintiffs have sought various forms of individualized non-incidental monetary damages, which are expressly prohibited for (b)(2) classes. *See* Opp. at 14–18. For instance, Plaintiffs seek monetary restitution for all destroyed vehicles, but the City demonstrated the complexities of valuing even a single vehicle using the

9

Kelley Blue Book. Opp. at 17–18. Plaintiffs ignore the City's authority and argument, and simply restate their unsupported claim that valuation is "formulaic" and therefore incidental. Reply at 22. Plaintiffs' reply also ignores the complexity of assessing damages under their due process claim, which alleges a *temporary* deprivation of property as analyzed under the fact-specific *Mathews* factors. Opp. at 17. Finally, Plaintiffs continue to advance their mistaken assertion that a (b)(2) class may be used as the first step in bifurcated liability and damages proceedings, but the reply ignores fatal issues with that proposal, including concerns arising under the Seventh Amendment. *See* Opp. at 18– 20.

**Finally**, Plaintiffs' reply fails to meaningfully rebut the City's arguments with respect to the factors set forth in Rule 23(a). The City pointed out several ways in which the named Plaintiffs fail to satisfy the adequacy and typicality prongs, including that Plaintiff Byrd is not a member of the class, Plaintiff Nelson cannot establish causation for the due process claim because her vehicle was subject to state forfeiture, and Plaintiffs Gant and Nelson cannot establish that they were innocent owners. Plaintiffs attempt to sidestep all discussion of these individualized facts by resorting to their characterization of their claims as facial challenges, but that argument fails for the reasons explained at 8–9 *supra*.

Lastly, Plaintiffs' reply confirms that they rely on superficial common questions of fact and law that will not "generate common *answers apt to drive the resolution of the litigation*." *Dukes*, 564 U.S. at 350 (emphasis in original) (citation omitted), including because Plaintiffs' claims are permeated with individualized fact questions. *See* Opp. at 22–27.

## CONCLUSION

For the reasons set forth in this sur-reply and in the City's opposition, the City respectfully requests that the Court deny Plaintiffs' motion to certify a Rule 23(b)(2) class.

Dated: October 27, 2023 Respectfully submitted,

ANDREW WORSECK
Andrew.worseck@cityofchicago.org
JENNIFER ZLOTOW                  /s/ *David Brandon Smith*
jennifer.zlotow@cityofchicago.org        David B. Smith
DAVID B. SMITH                      Assistant Corporation Counsel
david.smith4@cityofchicago.org         City of Chicago Department of Law
City of Chicago Department of Law
Constitutional and Commercial
   Litigation Division
2 North LaSalle Street, Suite 520
Chicago, Illinois 60602
(312) 744-4985 / 7220

*Attorneys for the City of Chicago*

11