UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Jerome Davis, *et al.*, | |
| *Plaintiffs,* | No. 19 CV 3691 |
| v. | Judge Lindsay C. Jenkins |
| The City of Chicago, | |
| *Defendant.* | |

MEMORANDUM OPINION AND ORDER

Plaintiffs here are among the tens of thousands of Chicagoans who have had cars impounded because they were allegedly used in connection with municipal code violations. Plaintiffs sued the City of Chicago, alleging that the impoundment scheme violates state and federal law. Three Plaintiffs—Spencer Byrd, Allie Nelson, and Lewrance Gant—move to certify a class seeking declaratory and injunctive relief. [Dkt. 113.] *See* Fed. R. Civ. P. 23(b)(2). The City opposes class certification on several grounds, one of which is that Plaintiffs lack standing to seek that relief. The Court agrees and denies Plaintiffs' motion for class certification.

## I. Background

Under Municipal Code of Chicago § 2-14-132 (the "ordinance"), the City impounds vehicles used in the commission of certain municipal violations, including driving without a valid license and drug offenses. [Dkt. 114 at 1; Dkt. 129 at 2.] The owners of impounded vehicles are assessed administrative penalties, plus charges for towing and storage. [Dkt. 129 at 2.] According to Plaintiffs, these charges are assessed without regard to the owners' culpability, and the fees prevent many Chicagoans from

ever regaining possession of their cars. [Dkt. 114 at 1.] Since May 2017, over 50,000 vehicles have been impounded pursuant to the ordinance. [*Id.* at 6.]

Believing that the impoundment ordinance violates federal and state law, Plaintiffs brought this putative class action against the City. The City moved to dismiss the operative First Amended Complaint [Dkt. 33], and the Court granted the motion in part. *Davis v. City of Chicago*, 481 F. Supp. 3d 757 (N.D. Ill. 2020). After conducting discovery, Plaintiffs moved to certify a class under Federal Rule of Civil Procedure 23(b)(2). [Dkt. 113.] Byrd, Nelson, and Gant propose to become class representatives, *see* Fed. R. Civ. P. 23(a), with respect to their claims that the impoundment ordinance violates the proportionate penalties clause of the Illinois constitution and the due process guaranteed by the U.S. Constitution and the Illinois constitution. [Dkt. 114 at 2.] The City opposes class certification. [Dkt. 129.]

All three Plaintiffs have had cars impounded pursuant to the ordinance. Byrd's car—containing his carpenter's and mechanic's tools—was impounded in June 2016 because a client he was giving a ride to allegedly had drug paraphernalia on him. [Dkt. 114 at 2–3.] Byrd was told he needed to pay over $6,000 to regain possession of his car; despite his efforts, he remains without his vehicle or tools. [*Id.* at 3.] In October 2017, while Nelson was out of town, Nelson's granddaughter allowed her boyfriend to drive Nelson's car. [*Id.* at 3–4.] Police pulled the car over and impounded it, claiming that the boyfriend had marijuana and a gun in his backpack. [*Id.* at 3–4.] Because Nelson was unable to pay more than $4,000 to retrieve her car, the City disposed of it. [*Id.* at 4.] In March 2019, Gant lent his car to a friend. [*Id.*] Police

2

stopped the car for a traffic infraction and learned that Gant's friend had a suspended driver's license; they impounded the car on that basis and because there allegedly was marijuana in plain view. [*Id.*] Gant would have needed to pay $4,750 to get his car back; when he could not, the City disposed of the car. [*Id.* at 4–5.]

No Plaintiff alleges that he or she has had additional vehicles impounded, but their reply brief asserted that in January 2023, after the motion for class certification was filed, Gant was threatened with impoundment of his current car. [Dkt. 131 at 17.] The Court reopened discovery at the City's request [Dkt. 140], and the parties filed supplemental briefs. [Dkt 153, 155.] The City explained that the letter threatening enforcement was the result of a clerical error by a police officer during a traffic stop, that the enforcement proceeding against Gant was dismissed when the City realized the error, and that his car was never impounded. [Dkt. 153 at 2–4.] Plaintiffs do not dispute this account, but they note that the City asserted Gant owed at least $3,000, that Gant obtained a lawyer to defend himself in the proceeding, and that the fear of losing another car to the ordinance took a mental toll on Gant for the five months until the proceeding was dropped in June 2023. [Dkt. 155 at 1–5.]

With the additional discovery and supplemental briefing complete, Plaintiffs' motion for class certification is now ripe for decision.

## II.    Legal Standards

To certify a class action under Rule 23, the prospective class must satisfy the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *Eddlemon v. Bradley Univ.*, 65 F.4th 335, 338 (7th Cir. 2023). The class must also meet the requirements of the relevant provision of Rule 23(b), here,

that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *see Lacy v. Cook County*, 897 F.3d 847, 864 (7th Cir. 2017). Further, the Seventh Circuit has read Rule 23 to contain an implicit requirement that the class be "ascertainable," meaning that classes are defined "clearly and with objective criteria." *Mullins v. Direct Digit., LLC*, 795 F.3d 654, 672 (7th Cir. 2015).

As the Supreme Court has explained and the Seventh Circuit has reiterated, "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Eddlemon*, 65 F.4th at 338–39 (citation omitted) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). But while the party seeking certification needs to present evidence, courts must take care not to wade too far into the merits. *See id.* at 341. "At class certification, the issue is not whether plaintiffs will be able to prove the[ ] elements [of their claims] on the merits, but only whether their proof will be common for all plaintiffs, win or lose." *In re Allstate Corp. Sec. Litig.*, 966 F.3d 595, 604 (7th Cir. 2020).

Before the Court can consider the class certification, though, it must consider whether it has subject-matter jurisdiction. *See Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 807 (7th Cir. 2013). For there to be subject-matter jurisdiction, the plaintiff must have standing, a personal stake in the outcome of the case. *See Prairie Rivers*

*Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007 (7th Cir. 2021).
"[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing
for each claim that they press and for each form of relief that they seek (for example,
injunctive relief and damages)." *Dinerstein v. Google, LLC*, 73 F.4th 502, 511 (7th Cir.
2023) (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021)). Further,
standing "must be secured at each stage of the litigation," and "as the litigation
progresses, the way in which the plaintiff demonstrates standing changes"; this
means that a plaintiff must establish standing "in the same way as any other matter
on which the plaintiff bears the burden of proof, i.e., with the manner and degree of
evidence required at the successive stages of the litigation." *Prairie Rivers*, 2 F.4th at
1007–08 (cleaned up). At the class certification stage, therefore, class representatives
must offer evidence, not mere allegations, to show they have standing.

## III. Standing to Seek Injunctive Relief

As is proper when seeking to certify a class under Rule 23(b)(2), the primary
relief Plaintiffs request is injunctive and declaratory. They

> request that the Court permanently enjoin and declare unconstitutional:
> (1) The City's policy and practice of impounding the vehicles of, and
> imposing fines and fees on, owners without regard to their guilt or
> innocence; and (2) the City's policy and practice of requiring the owner
> of an impounded vehicle to pay an administrative penalty prior to any
> final judgment, plus fees that accrue only because the City refuses to
> release the car, in order to regain possession of their vehicle.

[Dkt. 114 at 13.] They also seek five categories of incidental relief, some of which are
monetary, such as reimbursements for any fines paid. [*Id.* at 13–14.] *See, e.g.*, *In re
Allstate Ins. Co.*, 400 F.3d 505, 507 (7th Cir. 2005) ("When the main relief sought is
injunctive or declaratory, and the damages are only 'incidental,' the suit can be

5

maintained under Rule 23(b)(2)." (citations omitted)).[1] Because standing is not dispensed in gross, *Dinerstein*, 73 F.4th at 511, the Court must analyze whether Plaintiffs have standing to seek injunctive relief before turning to Rule 23's class certification requirements, *see Abbott*, 725 F.3d at 807.

"To have standing for prospective injunctive relief, a plaintiff must face a 'real and immediate' threat of future injury as opposed to a threat that is merely 'conjectural or hypothetical.'" *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) (citation omitted) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). Further, a named plaintiff in a putative class action cannot rely on the likelihood of injury to other class members for standing to seek injunctive relief—he must himself be subject to an imminent risk of injury. *See Campbell v. Miller*, 373 F.3d 834, 836 (7th Cir. 2004). Thus, to certify the proposed Rule 23(b)(2) class, at least one of Byrd, Nelson, and Gant personally must have standing to seek injunctive relief.[2]

The City argues that Plaintiffs lack standing for injunctive relief because they have "ma[de] no showing that there is a 'real and immediate threat' that their vehicles will be impounded again due to use in illegal activity." [Dkt. 129 at 9–11.] It

---

[1] The City argues that this relief is, in fact, a request for damages that is not incidental to the injunctive relief sought, which precludes certification as a Rule 23(b)(2) class. [Dkt. 129 at 15–18.] In light of the Court's holding on standing, it does not reach these arguments.
[2] The City also argues that the class should not be certified because absent class members lack standing and because many class members have not suffered the violations Plaintiffs identify. [Dkt. 129 at 12–14.] But Plaintiffs are correct that absent class members' lack of standing or injury does not preclude certification under Rule 23(b)(2), provided that a class representative has standing. [Dkt. 131 at 17–18.] *See Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 380 (7th Cir. 2015) ("A class will often include persons who have not been injured by the defendant's conduct, but this possibility or, indeed inevitability, does not preclude class certification." (citation omitted)); *cf. Dinerstein*, 73 F.4th at 511 (standing requires an injury in fact that is fairly traceable to the defendant's conduct).

relies on the principle that "[f]or purposes of standing to seek injunctive relief against future harm, courts generally assume that litigants 'will conduct their activities within the law and so avoid prosecution and conviction.'" *Simic*, 851 F.3d at 738 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974)); *see also Lyons*, 461 U.S. at 109–10 (no standing where the plaintiff could not show that he was likely to engage in illegal activity in the future and consequently suffer another unlawful chokehold). Plaintiffs counter that *Lyons* and *Simic* are inapposite because they "are rooted in the idea that plaintiffs cannot establish a risk of future injury through allegations of future *unlawful* activity." [Dkt. 131 at 15–16 (citing *Simic*, 851 F.3d at 738).] As Plaintiffs see it, they have standing because they are at risk of future impoundments despite having committed no offense. [*Id.* at 16.] Indeed, courts in this district have distinguished *Lyons* on this basis. *Smith v. City of Chicago*, 143 F. Supp. 3d 741, 752 (N.D. Ill. 2015) ("Plaintiffs' allegations are distinguishable from *Lyons* because Plaintiffs have alleged that they were engaging in innocent, lawful conduct …."); *accord Barrios v. City of Chicago*, 2016 WL 164414, at *8 (N.D. Ill. Jan. 14, 2016); *Williams v. City of Chicago*, 2023 WL 6388891, at *5 (N.D. Ill. Sept. 29, 2023).

The Court is not convinced that the lawfulness or unlawfulness of Plaintiffs' conduct is the key issue for standing purposes.[3] Instead, the obstacle they face is that

---

[3]    True, "courts generally assume that litigants 'will conduct their activities within the law and so avoid prosecution and conviction,'" *Simic*, 851 F.3d at 738 (quoting *O'Shea*, 414 U.S. at 497), but this assumption is not necessarily ironclad, *see id.* (suggesting that while the "assumption surely holds with respect to obeying laws that are not themselves the target of a party's constitutional challenge," a plaintiff might have standing if he alleges that he will violate a law he contends is unconstitutional). Further, the Court thinks standing to seek injunctive relief may, at least in some circumstances, rest on a risk of injury that depends on

they have not shown that their cars are likely to be impounded in the future. *Smith*, *Barrios*, and *Williams* hold that a plaintiff has standing to seek an injunction if he alleges that lawful activity puts him at risk of injury by the defendant. At the class certification stage, however, allegations will not do—Plaintiffs must establish standing using evidence. *See Eddlemon*, 65 F.4th at 338–39; *Prairie Rivers*, 2 F.4th at 1007–08.

Here, scant record evidence supports Plaintiffs' standing to pursue injunctive relief. Some of the authority and evidence they rely on is beside the point. They cite *Smith*, *Barrios*, and *Williams* [Dkt. 131 at 16; Dkt. 155 at 5], but those cases arose at the motion to dismiss stage and involved allegations, not evidence. Plaintiffs point out that the City previously impounded their cars [*id.* at 17], but "past injury alone is insufficient to establish standing for purposes of prospective injunctive relief." *Simic*, 851 F.3d at 738 (citing *Lyons*, 461 U.S. at 95–96). Setting those arguments aside,[4] what remains is insufficient to show that Plaintiffs "face a 'real and

the plaintiff violating a law that he is not challenging. Suppose a plaintiff alleges: (1) that every morning he jaywalks to the café across the street for a cup of coffee; (2) that any time the beat cops see him jaywalking, they become so incensed they pepper-spray and tase him; and (3) that the police department is well aware of the officers' behavior, but it refuses to reassign the officers to another beat or take other corrective action. Would the fact that jaywalking is against the law really mean the plaintiff lacks standing to seek an injunction against future violations of his Fourth Amendment rights?

[4] Plaintiffs argue that "[t]he City's ongoing impoundment policy, coupled with [their] past impoundments, support a claim for injunctive relief because there is a sufficient likelihood that they will again be wronged in a similar way." [Dkt. 155 at 5 (citing *Williams*, 2023 WL 6388891, at *5).] But *Williams*—like *Smith* and *Barrios*—arose at the motion to dismiss stage and considered allegations rather than evidence. Plaintiffs cite no authority for the proposition that the Court may consider allegations in combination with evidence at class certification. *See Eddlemon*, 65 F.4th at 338–39.

immediate' threat of future injury as opposed to a threat that is merely 'conjectural or hypothetical.'" *Id.* (citation omitted) (quoting *Lyons*, 461 U.S. at 102).

Plaintiffs assert that they "could be subject to the City's alleged policy again if they allow another person – such as a family member – to borrow their car and, unbeknownst to them, the police then suspect that an individual in the borrowed car has engaged in criminal activity." [Dkt. 137 at 17 (internal alterations omitted) (quoting *Barrios*, 2016 WL 164414, at *9).] Thus, Plaintiffs argue, they continue to "face the same risks because the City continues to enforce the same policies." [*Id.*] The Court does not doubt that Plaintiffs face a risk of impoundment today, perhaps the same level of risk they faced before the City seized their cars, but that does not confer standing. Adolph Lyons faced a risk of being stopped for a traffic violation and placed in a chokehold before October 6, 1976, and he continued to face such a risk afterward, but the Supreme Court held that he lacked standing to seek an injunction. *Lyons*, 461 U.S. at 97–98, 105–09. In doing so, the Supreme Court observed "that five months elapsed between October 6, 1976, and the filing of the complaint, yet there was no allegation of further unfortunate encounters between Lyons and the police," *id.* at 108, suggesting that if an event did not recur within that timeframe, the possibility that it will happen again is unlikely to be sufficient to support standing.[5]

The time intervals here are measured in years, not months. Byrd's and Nelson's cars were impounded in June 2016 and October 2017, respectively [Dkt. 114 at 2–4]; no record evidence suggests that they experienced further impoundments or

---

[5]     To be clear, the Court does not take *Lyons* to hold that an event *must* occur within a few months—or any specific timeframe—to constitute an actual, imminent risk to a plaintiff.

threats of impoundment as of March 15, 2023.[6] Nor have Plaintiffs presented evidence about the risk of vehicle impoundment that Chicagoans in general face. They assert that "tens of thousands of vehicle owners … have fallen victim to the City's unconstitutional impoundment practices" [Dkt. 114 at 1], but tens of thousands over what time period and with what denominator? If 50,000 vehicles are impounded over a five-year period, but there are 750,000 vehicles in the City, then assuming each car is equally likely to be impounded, there is only a 1.3% chance that a given car will be impounded in a given year.[7] But even if the actual likelihood that a driver will have his or her vehicle impounded are higher, standing requires a "real and immediate threat of future injury," not a "conjectural or hypothetical" one. *Simic*, 851 F.3d at 738 (cleaned up). Given the evidence in the record, the Court can do no more than speculate about the risk that Plaintiffs' cars might be impounded in the future.[8]

---

[6]     This is the date on which Plaintiff submitted their reply brief indicating that Gant *had* suffered another threat of enforcement. [Dkt. 131 at 17.] The Court infers from Plaintiffs' silence that Byrd and Nelson did not receive similar warnings or have their cars impounded.

[7]     These numbers are examples, but they may not be far off. As of February 2024, Cook County reports just over 1.6 million active license plates. Ill. Sec. of State, Active Registration Counts – Cook County (Feb. 2, 2024), https://www.ilsos.gov/departments/vehicles/statistics/lpcountycounts/COUNTY016.PDF. According to the U.S. Census Bureau, Cook County had a population of approximately 5.1 million as of July 2022, with Chicago making up roughly half of that total, at 2.67 million. U.S. Census Bureau, Quick Facts, https://www.census.gov/quickfacts/fact/table/cookcountyillinois/PST045222 (Cook County), https://www.census.gov/quickfacts/fact/table/chicagocityillinois/PST045222 (Chicago); *cf. Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022) (courts can take judicial notice of matters of public record not subject to reasonable dispute). If Chicago has about half of Cook County's cars as well as its people, then a rough estimate of 750,000 cars in Chicago is in the ballpark.

[8]     The Court acknowledges that it is operating with assumed figures, which may not be accurate, but as the proponents of federal jurisdiction, Plaintiffs bear the burden to establish that it exists. *See Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 540 (7th Cir. 2006). Since they have not built an evidentiary record on this point, the Court has done the best it can.

But Gant, unlike the other Plaintiffs, has at least been threatened with a second impoundment. [Dkt. 131 at 17.] He received letters in January 2023, shortly after Plaintiffs moved for class certification, in which "the City assert[ed] that it is entitled to impound [his] car, assess an administrative penalty against him, and hold the car until [Gant] pays the full amount of fines and fees that might be owed even though no final judgment has been entered." [*Id.* (citation omitted).] Gant's situation, Plaintiffs submit, "illustrates that the challenged policies pose a real and ongoing threat to all vehicle owners in the City." [*Id.*] The City raises several responses, one of which is that Plaintiffs "cite only a single piece of evidentiary support" for the proposition that they face an ongoing risk of future impoundments. [Dkt. 153 at 2.]

The Court agrees that Plaintiffs' evidence is insufficient. No doubt, Chicagoans including Gant are at some risk of having their vehicles impounded, but as the Court has explained, the record does not support a finding that Plaintiffs face a real, imminent risk of impoundment. *Cf. Simic*, 851 F.3d at 738. What is missing from the record is evidence about the likelihood of future injury; the past impoundment of Gant's car and letters he received do not fill that gap. Despite the recent threat of enforcement against Gant, he and the other Plaintiffs point to no evidence showing how likely they—or Chicagoans writ large—are to suffer an impoundment tomorrow, next month, or next year. In effect, Gant's position is the same today as it was before he received the letters. He knows there is a chance that the ordinance will be enforced against him in the future, but he can offer no more than conjecture about whether or when such enforcement might occur. *See id.*

Plaintiffs rightly take umbrage at the fact that because of an error the City caused Gant distress and fear of losing another car. [Dkt. 155 at 5–6; *see* Dkt. 153 at 2–3.] Those harms occurred in the past, however, and they can be remedied by a retrospective damages remedy. *See Lyons*, 461 U.S. at 109. Whether Gant or his fellow Plaintiffs have standing to seek injunctive relief is a different question. As the Court has explained, no Plaintiff has shown that he or she faces an actual, imminent threat of future injury, so no Plaintiff has standing to seek injunctive relief. *See Simic*, 851 F.3d at 738. Consequently, Plaintiffs' motion for class certification under Rule 23(b)(2) must be denied. *See id.*; *Campbell*, 373 F.3d at 836.

## IV. Certification Under Rule 23(b)(3)

Having concluded that Plaintiffs lack standing to pursue injunctive relief, the Court could stop there. However, this case may be suitable for certification under Rule 23(b)(3), and the Court will give Plaintiffs leave to seek class certification under that provision if they wish. Here, the Court makes a few observations that may assist the parties in briefing a Rule 23(b)(3) motion.

### A. Proper Class Representatives

First, it is apparent that Byrd cannot represent the class because he is not a member. [*Compare* Dkt. 114 at 6 (defining the class as individuals whose cars were impounded on or after May 1, 2017), *with id.* at 2–3 (noting that Byrd's car was impounded in 2016).] *See* Fed. R. Civ. P. 23(a) ("One or more *members of a class* may sue or be sued as representative parties …." (emphasis added)). Further, it would be futile to amend the class definition to make Byrd a member because his claims are time-barred. *Davis*, 481 F. Supp. 3d at 763–65. Nelson's state law claims are also

time-barred, *id.* at 765, so her claims are not typical of class members with timely claims, and she likely could not serve as an adequate representative because she has no incentive to vigorously pursue nonviable claims, *see* Fed. R. Civ. P. 23(a)(3)–(4). Thus, any motion for class certification under Rule 23(b)(3) should not propose Byrd as a class representative or Nelson as a class representative as to the state law claims.

### B.  Commonality

Second, the City argues that commonality is not present. *See* Fed. R. Civ. P. 23(a)(2). As the City sees it, Plaintiffs' claims present many individualized issues that will prevent the merits from being adjudicated on a classwide basis. [Dkt. 129 at 21–27; Dkt. 153 at 8–9.] But in addition to as-applied challenges, Plaintiffs challenge the validity of the ordinance on its face. [Dkt. 131 at 2–3 ("Plaintiffs are challenging a City policy that violates due process as applied and *on its face*."); *see also id.* at 5 (proposing a common question as to the validity of the ordinances under the proportionate penalties clause of the Illinois constitution).] The City argues that Plaintiffs' facial challenges are improper. As to due process, the City notes that at the motion to dismiss stage, "the Court interpret[ed] the due process claims as as-applied challenges." *Davis*, 481 F. Supp. 3d at 769 n.6. As to proportionate penalties, the City argues that this challenge cannot be litigated on a classwide basis because such a claim "necessarily entails consideration of the nature of an offense and an offender's culpability." [Dkt. 153 at 8–9 (citations omitted).] The Court disagrees that these arguments necessarily undermine commonality.

### 1.    Due Process Claims

Regarding the due process claims, it is true that the Court's earlier order interpreted the First Amended Complaint to present as-applied rather than facial challenges. *Davis*, 481 F. Supp. 3d at 769 n.6. However, "plaintiffs are the master of their complaint," and they may generally plead any claims they wish. *See Boim v. Am. Muslims for Palestine*, 9 F.4th 545, 557 (7th Cir. 2021) (citation omitted). *But see St. Augustine Sch. v. Underly*, 78 F.4th 349, 357–60 (7th Cir. 2023) (relying in part on the canon of constitutional avoidance to refuse to rule on a constitutional question when the plaintiffs chose to abandon their clearly winning state law claim in an attempt to force review of the constitutional question). As the Court noted, Plaintiffs pleaded both as-applied and facial challenges in the First Amended Complaint. *Davis*, 481 F. Supp. 3d at 769 n.6. Although the Court interpreted Plaintiffs to raise as-applied challenges alone, *id.*, subsequent briefing has made clear that Plaintiffs wish to pursue their facial challenge as well.

The Court did not hold that it was *forbidden* to consider a facial challenge. *Id.* Rather, it explained that "principles of judicial restraint counsel in favor of resolving as-applied challenges before facial ones in an effort to decide constitutional attacks on the narrowest possible grounds and to avoid reaching unnecessary constitutional issues." *Id.* (cleaned up) (quoting *Miller v. Downey*, 915 F.3d 460, 464 (7th Cir. 2019)). This case does not present the same constitutional avoidance concerns as did *St. Augustine School*, because the as-applied and facial challenges both attack the constitutionality of the ordinance, and the Court can consider as-applied challenges before turning to the facial challenges. *Cf. Miller*, 915 F.3d at 464. To the extent that

14

the Court's earlier order conclusively interpreted the First Amended Complaint not to contain facial due process claims, the Court reconsiders that ruling in light of subsequent developments. *See, e.g.*, *Menzer v. United States*, 200 F.3d 1000, 1004–05 (7th Cir. 2000) (law of the case doctrine is flexible). Plaintiffs may attempt to certify a class on both their as-applied and facial due process challenges to the ordinance.

### 2. Proportionate Penalties Claim

Turning to the proportionate penalties clause claim, the Court disagrees with the City that the nature of this claim makes it inappropriate for classwide resolution, at least on the basis of commonality. Plaintiffs propose common questions of fact and law that implicate the legality of the ordinance as to every impoundment, irrespective of individual circumstances. [Dkt. 114 at 9–10.] Those questions may be susceptible to common answers, even if the answers fail to establish that the ordinance violates the state constitution. *See Bennett v. Dart*, 953 F.3d 467, 469 (7th Cir. 2020) ("Rule 23(a) and (b) provides a list of requirements for class certification, all of which must be met, but surety of prevailing on the merits is not among them. Classes can lose as well as win." (citation omitted)). That is, it may be that no one whose car has been impounded pursuant to the ordinance can establish that the ordinances facially violate the state constitution, leaving class members with as-applied challenges only. If the City is correct, then it will win on the merits of their facial challenge, but as long as Plaintiffs seek to prove that claim by classwide proof, commonality does not pose a barrier to class certification. *See Eddlemon*, 65 F.4th at 341 ("[A]ny attempt to cast doubt upon the sufficiency of [plaintiff's proposed classwide evidence] to prove

the alleged contractual promises goes to the merits of [his] claims, not to whether common questions exist and predominate." (citation omitted)).

### C. Typicality and Adequacy of Representation

In addition to the points made above, the City argues that Plaintiffs' claims are not typical of other class members and that they are not adequate representatives of the class. [Dkt. 129 at 27–30.] Except to the extent that Byrd and Nelson cannot serve as class representatives, the Court disagrees, at least with respect to Plaintiffs' facial challenges. For these challenges, the specifics of how Plaintiffs' vehicles were seized are irrelevant—Plaintiffs will attempt to prove that every application of the ordinance violates federal due process or the state constitution. [Dkt. 131 at 11–14.] Plaintiffs' claims appear typical insofar as their cars were impounded pursuant to the ordinance, and the Court sees no reason why they will not adequately represent the class's interests as to the facial claim because if they prevail, they—and every other class member—may stand to receive some remedy.

### D. Class Counsel

Next, Plaintiffs request that their counsel—the Institute for Justice and Pavlich Law Group—be appointed class counsel under Rule 23(g). [Dkt. 114 at 14–15.] They explain that the Institute for Justice and its attorneys who have appeared in this case have experience litigating class actions and constitutional issues, but they provide no details about Pavlich Law Group. To the extent that they ask the Court to appoint both the Institute for Justice and Pavlich Law Group class counsel, a motion for class certification under Rule 23(b)(3) should address all counsel's qualifications

16

and experience under Rule 23(g) or explain why it would be appropriate to appoint Pavlich Law Group class counsel for other reasons.

### E. Rule 23(c)(4)

Finally, albeit in the context of their motion for class certification under Rule 23(b)(2), Plaintiffs point out that the Court can certify certain issues for classwide treatment under Rule 23(c)(4), even if other issues cannot be resolved on a classwide basis. [Dkt. 131 at 23.] *See Chi. Teachers Union, Loc. No. 1 v. Bd. of Educ.*, 797 F.3d 426, 445 (7th Cir. 2015) ("Rule 23(c)(4) permits the court to certify particular issues for resolution as a class action."). Plaintiffs are correct, although the Court notes that their discussion of Rule 23(c)(4) is rather cursory. While the Court can certify issues for classwide treatment under Rule 23(c)(4), it is incumbent on the party seeking certification to provide the legal and evidentiary basis. *Cf. Bernacchi v. First Chi. Ins. Co.*, 52 F.4th 324, 328 (7th Cir. 2022) (explaining that under "the party presentation rule, … parties frame the issues for decision, whereas the courts play the role of neutral arbiter of matters the parties present" (cleaned up)). The Court does not mean to suggest that Plaintiffs' current briefing on Rule 23(c)(4) is necessarily insufficient; it simply flags the issue for the parties' attention if there is future briefing.

\*    \*    \*

To be clear, the Court is not deciding whether Plaintiffs will succeed if they move for class certification under Rule 23(b)(3). The Court's purpose in addressing these arguments is to avoid rehashing the same points if Plaintiffs move for class certification again and to give the parties the opportunity to sharpen their arguments

in future briefing. It remains Plaintiffs' burden to show, based on record evidence, that they meet each Rule 23 requirement. *See Eddlemon*, 65 F.4th at 338.[9]

## IV. Conclusion

For the foregoing reasons, the Court holds that Plaintiffs lack standing to seek injunctive and declaratory relief, so the motion for class certification under Rule 23(b)(2) is denied. [Dkt. 113.] The Court will grant Plaintiffs leave to move for class certification under Rule 23(b)(3) with respect to their proportionate penalties clause and due process claims.[10]

The Court notes that Plaintiffs may petition the Seventh Circuit to hear an appeal from the denial of their motion for class certification. Fed. R. Civ. P. 23(f). The Court will not stay proceedings while a petition or appeal is pending. If a petition is filed, the parties should inform the Seventh Circuit that a second motion for class certification may be forthcoming, in case it wishes to defer ruling on the petition until this Court rules on a second round of class certification or the time to file elapses.

Enter: 19-cv-3691
Date: February 13, 2024

_____
Lindsay C. Jenkins
United States District Judge

---

[9] The Court notes that Plaintiffs' memorandum in support of class certification did not exceed the ordinary 15-page limit for briefs, but both the City's response and Plaintiffs' reply required additional pages. Conciseness is a virtue, but class certification is a critical stage of litigation. Especially because the Court must perform a rigorous analysis under Rule 23, *see Eddlemon*, 65 F.4th at 338, a more thorough treatment of the issues may be appropriate.

[10] This Order has no impact on claims Plaintiffs have not sought class certification on.